ELBERT CROFT v. STATE.

158 So. 454.
Division B.
Opinion Filed January 2, 1935.

*Whitaker Brothers,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BUFORD, J.—The writ of error here brings for review the judgment of the Circuit Court in and for Osceola County,

Florida, against the plaintiff in error wherein he was convicted of the offense of robbery while being armed with a dangerous weapon and then and there having the intent to kill or maim the person robbed, if resisted.

Plaintiff in error presents several assignments of error. We shall discuss only one.

It is contended that the court erred in charging the jury of its own volition as follows:

"Robbery is defined as the felonious taking of money or goods of value from the person of another, or in his presence against his will, by violence or putting him in fear. It is necessary to prove that any goods or money taken is of some value. It is essentially an element of the offense of robbery that the property be taken from its possessor by violence or by putting in fear."

"Now 'possession' need not be the owner. It is sufficient if he is the custodian—if it was his property, or if it was the property of which he was in lawful custody.

"The force by means of which robbery is committed may be divided into two classes—actual force and constructive force. Under actual force is included all violence inflicted directly on the person robbed. Under constructive force it is meant demonstrations of force and means by which the persons robbed is put in fear sufficient to suspend free exercise of the will to prevent resistance to the taking.

"The intimidation or putting in fear is that constructive violence which constitutes robbery. It means in dealing in cases of robbery, not actual, and directed to such as is exerted upon the person robbed by operation upon his fears. No matter how slight the cause of creating the fear may be, nor by what other circumstances the taking may be accomplished, if the person be attended with such circumstances of terror threatening by word or gesture, as in common experience are likely to create an apprehension of

danger, and to induce a man to part with the property for the safety of his person, he is said to be put in fear."

Now the indictment in this case charged "that Elbert Croft and another person, the name of such other person being to the grand jurors unknown, late of the County of Osceola aforesaid, in the circuit and State aforesaid, laborers on the 21st day of March in the year of Our Lord One Thousand Nine Hundred and Thirty-four, with *force and arms,* at and in the County of Osceola aforesaid, in and upon one P. E. Kirkpatrick, alias P. E. Kirkpatrick, as cashier of The Citizens State Bank, an assault did make and him the said P. E. Kirkpatrick, alias P. E. Kirkpatrick, as cashier of The Citizens State Bank, *in bodily fear and danger of his life did then* and there feloniously put, and nine thousand three hundred and one dollars and fifty-seven cents ($9,301.57), a better description of which is to the grand jurors unknown, lawful money of the United States of America, of the value of nine thousand three hundred and one dollars and fifty-seven cents ($9,301.57), and one Smith and Wesson 38-caliber revolver of the value of thirty dollars ($30.00), all being the property of, The Citizens State Bank, a Florida banking corporation, from the custody and against the will of the said P. E. Kirkpatrick, alias P. E. Kirkpatrick, as cashier of The Citizens State Bank, then and there *by force and violence did feloniously rob, steal, take and carry away the said Elbert Croft and the other* person, the name of whom being to the grand jurors unknown, being then and there *armed with dangerous weapons, to-wit, pistols, with intent if then and there resisted by the said* P. E. Kirkpatrick, alias P. E. Kirkpatrick, as cashier of, *The Citizens State Bank, him,* the said P. E. Kirkpatrick, alias P. E. Kirkpatrick, as cashier of, The Citizens State Bank, *then and there to kill or maim."*

The statute under which this indictment is drawn, Section 5055 R. G. S., 7157 C. G. L., provides:

"Whoever assaults another and feloniously robs, steals and takes from his person or custody, money or other property which may be the subject of larceny, such robber being armed with a dangerous weapon, with the intent if resisted to kill or maim the person robbed, or being so armed wound or strike the person robbed, shall be punished by imprisonment for a term of years or for life imprisonment in the discretion of the court for and during a term of his natural life."

The indictment here charged the essentials of the crime under this section of the statute, that is that the accused assaulted P. E. Kirkpatrick and did rob, steal and take from the custody of the said Kirkpatrick money which was the subject of larceny; that the accused was then and there armed with a dangerous weapon, to-wit, a pistol, and that such assault and robbery was so committed with the intent on the part of the accused, if resisted, to then and there kill or maim the said Kirkpatrick.

The intent to kill or maim the person assaulted if resisted at the time of the commission of the offense is a material element of the crime and was a material allegation in the indictment. See Richards v. Mayo, 108 Fla. 308, 146 Sou. 94.

The court in its charge failed to explain to the jury that the above factor was a material element of the offense charged and that it was necessary to prove that element before the accused could be convicted in this case. Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged and a charge attempting to

define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. It is equivalent to directing the jury that it is not necessary for the State to prove any elements of the offense except those included in the definition given by the court.

To have the advantage of this right it is not necessary for the accused to request special charges covering the elements of the offense which have not been covered by the charge embraced in the definition given to the jury by the court of its own volition because, as hereinbefore stated, it is the duty of the court to define to the jury the elements of the offense with which the accused is charged and such definition must be at least not misleading. See Finch v. State, 116 Fla. 437, 156 Sou. Rep. 489.

Under the charge of the court in this case the jury were not required to give any consideration whatever as to whether or not the accused, if he committed the robbery being armed with a dangerous weapon, then and there had any intent, if resisted, to kill or maim the person being robbed.

The charge as given constituted reversible error.

Another error was committed. While it probably was not serious enough to cause reversal, it was serious enough to warrant some comment here.

The record shows that the jury retired to consider their verdict at 4:45 P. M. At 9:10 P. M. they returned in the court and reported that they were unable to reach a verdict. Then the following occurred:

"By THE COURT: Well, is there any question of law that's bothering you, the question of what the law was as given you by the Court?

"FOREMAN: No, I think those were clearly understood.

"By the Court: Well, have you been making any progress?

"By the Foreman: Very little.

"By the Court: Well, how long has it been since you made any progress?

"By the Foreman: We took a second ballot almost immediately after we came back from supper.

"By the Court: Have you taken any ballot since then?

"By the Foreman: Yes, sir, it remained unchanged.

"By the Court: Well, of course, it is very desirable for both parties that you should reach a verdict. I don't want to keep you together in deliberating on the case uselessly, but I think you ought to consider the case further. You may be tired. You have, of course, had a long day. I will either let you consider the case until later in the evening, which I think might be better, or we could adjourn and you can come back in the morning and deliberate further on the case. I think you might as well consult among your fellow jurors and find out which is preferred. (After consultation the Foreman stated they would prefer to continue their deliberations tonight.)

"By the Court: The Court will wait for you until 10:30 P. M. tonight, if necessary.

"To all of which defendant excepted.

"At 10:30 o'clock P. M. the jury returned to the court room.

"By the Court: State if you have any further report to make, gentlemen.

"By the Foreman: Yes, sir, we have come to a verdict."

The statement of the court was calculated to coerce a verdict and whether or not the verdict was one desirable for one or the other of the parties depends altogether upon

what that verdict should be. Certainly there was no reason for the court to instruct the jury that a verdict of guilty would be desirable for the defendant, nor on the other hand, that a verdict of not guilty would be desirable for the State. The desire of the parties, however, should have no influence whatever on the result of a jury's deliberations. The jury should always be left free to the extent that each juror may follow the dictates of his mind and conscience in arriving at his verdict. He should reason with his fellow jurors, but he should not be coerced by matters outside the law and the evidence.

The judgment must be reversed. It is so ordered.

Reversed.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.