46 So.2d 718 (1950)
DRIVER
v.
STATE.
Supreme Court of Florida, Division B.
June 2, 1950.
Rehearing Denied June 26, 1950.
Amos Lewis, Marianna, James A. Mulkey, Geneva, Alabama, and E.C. Boswell, Geneva, Alabama, for appellant.
Richard W. Ervin, Attorney General and Reeves Bowen, Assistant Attorney General for appellee.
CHAPMAN, Justice.
Oscar Smith, Johnny Ray Smith and James Neal Driver were convicted by a jury in the Circuit Court of Bay County, Florida, of the crime of armed robbery. The trial court imposed a sentence of twenty-five years each in the State Prison of Florida at hard labor. The appeal here was taken only by James Neal Driver. Counsel for appellant contend that the judgment entered below is erroneous on several grounds or reasons, each of which will be hereinafter considered.
It is contended (a) that the evidence is legally insufficient to convict the defendants, or either of them, of armed robbery as charged in the information; and (b) the evidence adduced by the State of Florida as to the identification of James Neal Driver is legally insufficient to sustain the verdict and judgment of conviction as entered below.
It is not disputed that the Edgewater Gulf Beach Apartments, situated in Bay County, Florida, at an early hour on July 10, 1949, were entered by three armed men and a sum of money  less than $100  was unlawfully and forcibly taken from Don Hutchison *719 and Herschel Joyner, employees at the time in the control and management of the Apartments. We observe disputes and sharp conflicts in the testimony on the point as to the identity of the three men who robbed the Apartments. An officer gave chase to the automobile leaving the Apartments immediately after the robbery and identified the driver of the fleeing car as one of the defendants convicted in the lower court and other men were in the speeding automobile.
One of the robbers had a pistol covered with a paper bag and another had a knife. Joyner was hit on the head by the robber having the pistol and the two employees, under cover of the pistol, were locked in a closet and threatened to be shot full of holes if they came out in five minutes. When in the closet they heard the robbers' car drive away. The appellant Driver got the money out of the cash drawer. One of the employees identified Driver because of his hair and peculiar eyes; he wore a green colored sport coat, grey trousers, and shoes; the witness was not sure about the hat he wore, if any. The two employees identified appellant Driver as the man taking the money from the cash drawer in the office of the Apartments while the other two robbers covered them with a Colts pistol and a knife.
Counsel for appellant contend that the testimony of the two employees was materially discredited when they attempted to identify appellant Driver at the court house at Geneva, Alabama, some three days thereafter. It appears from the evidence that some six men were each numbered and placed in a line  Driver being one of them  and the two employees were required to view the line and identify the man who robbed the Apartments in Bay County, Florida, some 80 or 90 miles away. It is argued that the identity of Driver by the two witnesses is so vague, indefinite and uncertain that this Court should, as a matter of law, set aside the verdict of the jury in the lower court.
As to the identity of the appellant Driver, it is pointed out, that at the exact hour of the robbery Driver was in company of a young lady in an automobile on a country road at a point between Geneva, Alabama, and the Kalamazoo Club situated near the Florida-Alabama line. The young lady and the appellant returned to her home at Geneva about 4:00 o'clock a.m., July 13, 1949. This alibi was supported by the testimony of two witnesses, Newsome and Johnson, who saw appellant in the car with the young lady at the time the robbery occurred in Bay County, Florida. One witness called by the State testified that the general reputation for truth and veracity of the two defense witnesses in and about the community of Geneva, Alabama was bad. The young lady with the appellant, it developed, was employed (or had been) in the capacity of a waitress at a hotel in Geneva owned by appellant's father. It was within the province of the jury to accept as true and base their verdict on the testimony of either the State's evidence or the appellant's evidence, as it was the jury's duty to decide the disputes and conflicts in the evidence. This Court, under our adjudication, is without power to substitute its judgment for that of the jury or to pit its conclusions as against the conclusions of the jury on the disputes and conflicts in the evidence.
It is next contended that the following instruction to the jury by the trial court was not only erroneous but was highly prejudicial and therefore a new trial must be awarded the appellant. The instruction is viz: "The Court further charges you that the crime charged in this case does not depend upon the kind or value of the property taken; the gist of the offense being the felonious taking by the accused being at the time armed with a dangerous weapon, of money or property from the person or custody of another by violence or putting in fear. Nor is the crime graded by the value of the article taken, and hence proof of the amount in value of the articles taken is immaterial."
It is fundamental that instructions should be confined to the law applicable to the controversy. Abstract instructions on questions of law not applicable should not be given by a trial court. We have held that the proper rule to be observed when determining the correctness of a charge *720 is that the challenged instruction should be considered in connection with all other instructions bearing on the same subject and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated on the challenged instruction standing alone, must fail.
Our answer to the contention that the above quoted instruction as given to the jury by the trial court was erroneous and prejudicial is found in a careful study and analysis of other pertinent instructions on the point in issue as given by the trial court. It is not necessary for us to set out in this opinion other instructions on the point in controversy as given by the trial court. The judgment entered below comes on appeal to this Court with a presumption of correctness and the burden of showing error by law rests on the appellant. We have examined our holdings in Croft v. State, 117 Fla. 832, 158 So. 454; Finch v. State, 116 Fla. 437, 156 So. 489, and Richards v. Mayo, 108 Fla. 308, 146 So. 94, cited by counsel for appellant. The defective instructions as to the applicable law as given by the trial court in each of the cited cases did not appear in the instructions as given in the case at bar in the lower court.
Appellant's third question is viz.: Did the trial court, in his oral charge to the jury, instruct the jury with reference to every element of the crime of armed robbery as denounced by the statutes of Florida, giving to the jury a full complete analysis of every element constituting the crime of armed robbery?
The contention is made that at no place in the court's instruction was it made to appear that before the jury could find the appellant guilty of armed robbery, they (the jury) must be satisfied from all the evidence, beyond a reasonable doubt, that the defendants had an intent to kill or maim at the time of the commission of the crime, if such crime was committed.
Pertinent portions of the information are viz.: "The said Oscar Smith, then and there being armed with a dangerous weapon, to-wit, a pistol with intent then and there in him, the said Oscar Smith, if then and there resisted by the said Herschel Joyner to then and there maim and kill the said Herschel Joyner; and Johnny Ray Smith and James Neal Driver being present, did unlawfully and feloniously counsel, aid, abet, procure and command the said Oscar Smith, the aforesaid felony to do and commit."
Several instructions appearing in the record directed that the burden of proof was on the State of Florida to establish beyond a reasonable doubt every material allegation of the information. The following instruction, taken from other charges on the point in controversy, is a complete answer to appellant's third question: "I charge you that the burden of proof is upon the State to convince you beyond a reasonable doubt and to a moral certainty of the truth of every material allegation contained in the information and unless you are convinced beyond a reasonable doubt that Oscar Smith did feloniously and violently rob, steal and take from the possession and custody of Herschel Joyner and against his will, lawful money of the United States of America of the value of $92.50, or some sum of money or other thing of value of the goods and property of Wakulla Edgewater Company, a corporation, it would be your duty to acquit the defendants and each of them."
The evidence discloses that one of the robbers had a pistol and struck Joyner over the head with it, then marched the two employees back into a closet, locked the door, and told them to stay in there five minutes and if they came out before then they would be "shot full of holes". From the use of this language by the robbers, the jury concluded that the robbers intended to kill and maim the employees if they resisted.
Appellant's first question challenges the power of Honorable E. Clay Lewis, a Judge of the Fourteenth Judicial Circuit, to make and enter certain enumerated orders in the cause after announcing that he would not preside in the trial of the appellant. The same question was raised on motion for a new trial, when Honorable Ira A. Hutchison heard such testimony as was adduced by the parties prior to the entry of the order overruling the motion for a new trial. *721 These two questions may be considered and ruled upon as a single assignment. The orders as made by Judge Lewis after his alleged disqualification are viz.: (1) Entertaining and granting a motion of the State Attorney for a special venire; (2) drawing a special venire of 50 jurors; (3) qualifying the regular and special venires on their voir dire; (4) excusing from jury service the following jurors, viz.: H.L. Bozeman, H.J. McCall, J.D. Harden, Donald Craft, T.H. Cowser, A.B. Pate, James H. Bush and H.H. Surber.
Counsel for appellant contend in their brief and during oral argument heard at the bar of this Court that Judge H. Clay Lewis as a matter of law, was disqualified to make and enter the orders supra. Sections 38.02 and 38.05, F.S.A., and authorities from other jurisdictions are cited to sustain their position. Pertinent provisions of Section 38.02, supra, are viz.: In any cause in any court of this State * * * any person interested in the litigation, prior to the entry of a judgment or final decree, may show by suggestion filed in the cause that the Judge before whom the cause is pending or some person related to said Judge by consanguinity or affinity within the third degree is a party thereto or is interested in the result thereof or the said Judge is related to an attorney or counselor of record in said cause by consanguinity or affinity within the third degree * * * such suggestion shall be filed in the cause within thirty days after the party filing the suggestion * * * learned of such disqualification * * * otherwise the grounds of disqualification shall be taken and considered as waived. If the truth of any suggestion appears from the record, the Judge shall forthwith enter an order reciting the filing of the suggestion and the grounds of his disqualification and declaring himself to be disqualified in the cause.
Other pertinent Sections of Florida Statutes Annotated 1941, F.S.A., are viz.:
"38.03. Waiver of grounds of disqualification by parties. The parties to any cause, or their attorneys of record, may, by written stipulation filed in the cause, waive any of the grounds of disqualification named in § 38.02 and such waiver shall be valid and binding as to orders previously entered as well as to future acts of the judge therein; provided, however, that nothing herein shall prevent a judge from disqualifying himself of his own motion under § 38.05.
"38.04. Sworn statement by judge holding himself qualified. Whenever any judge shall enter an order under § 38.02 declaring himself qualified to act in said cause, he shall contemporaneously therewith file therein a sworn statement that to the best of his knowledge and belief the ground or grounds of the disqualification named in the suggestion do not exist.
"38.05. Disqualification of judge on own motion. Any judge may of his own motion disqualify himself where, to his own knowledge, any of the grounds for a suggestion of disqualification, as named in § 38.02, exist. The failure of a judge to so disqualify himself under this section shall not be assignable as error or subject to review by the supreme court.
"38.06. Effect of acts where judge fails to disqualify himself. In any cause where the grounds for a suggestion of disqualification, as set forth in § 38.02, appear of record in the cause, but no suggestion of disqualification is filed therein, the orders, judgments and decrees entered therein by the judge shall be valid. Where, on a suggestion of disqualification the judge enters an order declaring himself qualified, the orders, judgments and decrees entered therein by the said judge shall not be void and shall not be subject to collateral attack."
The record discloses that the suggestion of disqualification of the Judge was orally brought to his attention but not in writing, and the Judge recused himself without making a formal written order. He did not preside at the trial but Judge Ira A. Hutchison took over and disposed of the case. Suggestions of disqualification under the statutes, supra, were in writing and filed in the recent cases of Tillman v. State, Fla., 44 So.2d 644, and State ex rel. Caro v. Reese, 142 Fla. 734, 195 So. 918.
Arguendo, let us concede that the appellant, like all litigants in the courts of Florida, was entitled to the cold neutrality of an *722 impartial Judge during the trial of his case. The record has been checked in an effort to find the alleged miscarriage of justice. The brief of appellant and argument of counsel here fail to disclose the rights, if any, that were disregarded during the trial as presided over by Judge Hutchison. The drawing of the names of jurors from the box by Judge Lewis, the issuance of a venire, and the return of the venire, coupled with a discharge order from jury service of men above the age for duty, at the most are ministerial acts and not condemned by the Statutes, supra. See Section 54.23, F.S.A.
We fail to find error in the record.
Affirmed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.