636 So.2d 869 (1994)
Mark GARRAMONE, Appellant,
v.
STATE of Florida, Appellee.
David Rodgers, Appellant,
v.
STATE of Florida, Appellee.
Nos. 92-2381, 92-2382.
District Court of Appeal of Florida, Fourth District.
May 11, 1994.
Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant-Garramone.
*870 John Brewer, Lake Worth, for appellant-Rodgers.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee.
PARIENTE, Judge.
Appellants, Mark Garramone and David Rodgers (defendants), were both charged with second degree murder. They were jointly tried and convicted of manslaughter, a lesser included offense. We sua sponte consolidate the appeals.
Defendants assert prejudicial error resulting from the trial court's failure to give a standard jury instruction on the justifiable use of non-deadly force. The essence of the defense was that the defendants acted in self-defense. The court instructed only on the justifiable use of deadly force. Whether the actions of the defendants constituted deadly or non-deadly force should have been a jury question. Accordingly we reverse for a new trial.
In the early morning hours of August 7, 1991, the defendants, while walking on the Atlantic Avenue bridge over the intracoastal waterway, were approached by the victim, Allen Norman. The victim advised the defendants he was recently released from jail and needed food and a place to stay. There was a dispute as to how close the victim came to the defendants and whether he actually touched them. The defendant Garramone admits that he pushed the victim away, and at this juncture, the victim began scuffling with the defendants near the railing of the bridge. At some point during this encounter, the defendants either pushed or threw the victim over the railing.
Once the victim was in the water, the defendants heard him yell that he could not swim. According to the defendants, they did not help the victim because they thought it might be a ploy to lure them into the water and kill them. The defendants watched the victim and claimed to have left the area only after observing the victim move toward a bridge piling. Both defendants apparently believed that the victim had made it safely out of the water. Tragically, the victim did not survive and police divers recovered the victim's body underwater. The defendants first denied and then admitted their involvement to the police officers in statements given shortly after the incident. Defendants point to the fact that an autopsy revealed a quantity of cocaine in the victim's body indicating he would have been at a craving stage, if not a panicky stage at the time of death, as providing legitimate support for their fears of danger from the approaching victim.
Our function is not to pass moral judgment on the defendant's actions in either pushing or throwing another human being over a bridge at night and then walking away. Rather, it is our role to make a determination on whether defendants were entitled to the requested instruction.
A defendant is entitled to a jury instruction on his theory of the case if there is any evidence to support it. Smith v. State, 424 So.2d 726, 732 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). The trial court should not weigh the evidence for the purpose of determining whether the instruction is appropriate. Smith. As Judge Downey stated in Deveaugh v. State, 575 So.2d 1373, 1374 (Fla. 4th DCA 1991):
It is apodictic that a party is entitled to have the jury instructed upon his theory of the case. The instruction on justifiable use of nondeadly [sic] force was of the essence of appellant's defense and clearly should have been given.
In concluding that it was error to deny an instruction on justifiable use of force, Judge Stone in Kiernan v. State, 613 So.2d 1362 (Fla. 4th DCA 1993) quoted from Kilgore v. State, 271 So.2d 148, 152 (Fla. 2d DCA 1972):
It is not the quantum or the quality of the proof as to self-defense that determines the requirement for giving the charge. If any evidence of a substantial character is adduced ... the element of self-defense becomes an issue, and the jury, as the trier of the facts, should be duly charged as to the law thereon, because it is the jury's function to determine that issue.
In this case, the trial court obviously found that a self-defense instruction was justified; *871 however, it only instructed the jury on the justifiable use of deadly force. Compare Kiernan. While defendants urged that a non-deadly force instruction be given, the state advocated a deadly force instruction. The trial court apparently felt obligated to choose between an instruction on deadly force or one on non-deadly force.
The defendants' theory of defense was that they had used reasonable non-deadly force in initially pushing the victim away and then in breaking up the fight by pushing the victim over the bridge into the waterway. The jury, not the judge, should have been able to determine whether pushing or throwing a fully clothed individual over the railing of a 16 foot bridge into the intracoastal waterway at night constitutes deadly or non-deadly force, and then to weigh the reasonableness of such force against the acts of the victim. See Cooper v. State, 573 So.2d 74 (Fla. 4th DCA 1990).
The state argues that the deadly force instruction was proper because the victim died. However, it is the nature of the force and not the end result that must be evaluated. Deadly force occurs where the natural, probable and foreseeable consequences of the defendant's acts are death. By statute, deadly force is defined as force likely to cause death or great bodily harm. See § 776.06, Fla. Stat. (1993). Discharge of a firearm has been held as a matter of law to constitute deadly force because a "firearm is, by definition, a deadly weapon which fires projectiles likely to cause death or great bodily harm." Miller v. State, 613 So.2d 530, 531 (Fla. 3d DCA 1993). Cases, other than those dealing with deadly weapons such as firearms, provide no bright line test. In Cooper, our court rejected the state's contention that an automobile travelling at a decent rate of speed is deadly force, as a matter of law, holding "that whether the force used was deadly, was a question for the jury." 573 So.2d at 76.
While the factual circumstances suggest that the action of throwing a fully clothed individual over a bridge at night was likely to cause death or great bodily harm, neither the trial court nor the appellate court may usurp the function of the jury. Smith. The defendants point to the low railing height, the bridge height and depth of the water as factors the jury could properly consider in evaluating the nature of the force they used in allegedly defending themselves. Defendant Garramone had jumped off the same bridge himself and had exited the water from the same place he last saw the victim. The autopsy revealed that the victim did not die as a result of the fight or the fall, but from drowning.
Because the deadly force instruction was given on the claim of self-defense, the jury heard that deadly force is justified only to prevent imminent death, great bodily harm to himself or another or to prevent the imminent commission of a felony. § 776.012, Fla. Stat. (1993). The jury was also instructed that deadly force cannot be used if, by retreating, the defendants could have avoided the need to use the force. Fla.Std. Jury Instr. (Crim.) 3.04(d). The defendants did not contend they were in danger of death or great bodily harm, nor did they contend they were unable to retreat; therefore, an instruction on the justifiable use of deadly force did not fit with the evidence and was completely inconsistent with their defense.
Non-deadly force is justified if the defendant "reasonably believed that such conduct was necessary to defend [himself or another] against [the victim's] imminent use of unlawful force... ." Fla.Std. Jury Instr. (Crim.) 3.04(e). The requirement to withdraw is imposed only if the defendant is the initial aggressor and provokes the victim's use of force. Therefore, there are significant differences between the two instructions.
Because it was clear in this case that deadly force would have been too extreme a response to the victim's actions, the instructions affected the ability of the defendants to present and argue self-defense. The failure to allow the jury to determine whether the force used was deadly or non-deadly, coupled with the refusal to give an instruction on non-deadly force, cannot be said to be harmless error. Cooper; State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Because this case will be retried, we address one additional point raised on appeal *872 by defendant Rodgers. We do not agree that it was error to exclude evidence of federal regulations relating to the height of bridge railings.
REVERSED AND REMANDED.
WARNER and POLEN, JJ., concur.