678 So.2d 459 (1996)
Christopher Mark SPENCE, Appellant,
v.
STATE of Florida, Appellee.
No. 95-0133.
District Court of Appeal of Florida, Fourth District.
August 14, 1996.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, Judge.
Christopher Spence was tried for and convicted of resisting arrest with violence. Because we find that the trial court erred in denying Spence's request for a jury instruction on the lawful use of nondeadly force, we reverse the conviction and remand for a new trial. We affirm all other issues raised in this appeal.
Evidence at trial showed that Spence and his girlfriend's son entered a Winn Dixie which Officer Riddick ("Riddick") was guarding. Riddick claimed that as Spence walked by, he stated to the boy that "there goes that fucking police officer."[1] The boy, who was thirteen at the time of trial, testified that Spence said nothing when they entered the store, but as they were checking out, Spence said, "there is that cop who was searching the car."
Spence paid for his items at the cash register nearest to where Riddick was standing. Riddick's account of the incident was that after paying, Spence walked over to Riddick, "got in his face," and said, "you don't like me, I want to fight you, take off your badge, I'll make you call for backup." When Riddick told Spence to leave before he got himself into trouble, Spence said, "you don't know how to treat black people, that's what the problem is." At that point, Riddick gave Spence a trespass warning.
A witness who was at the store testified that as Spence was leaving Riddick asked, "are you threatening me" and Spence replied, "yes." A Winn Dixie employee, corroborated Riddick's account of the events.
Spence testified on his own behalf, and denied saying anything to Riddick upon entering the store. Spence claimed that upon checking out, he told the boy "that is the officer that harassed me two years ago and searched your mother's car."
*460 Spence left, but returned to the store two hours later and asked for Riddick's badge number saying "we'll take care of this matter legally." Riddick complied with the request. What happened next is disputed; however, Spence claimed, and the boy corroborated, that as Spence left the store, Riddick followed them out of the store and appeared to be reaching for his gun. Spence ran, and Riddick chased. Spence testified that he feared for his life when Riddick was chasing him.
Spence ran approximately two blocks, broke through the gate of a house, and pounded on the front door. The owner of the house testified that Spence was crying and saying, "help me, help me, they're trying to kill me." Riddick was chasing with his baton drawn, yelling that Spence was under arrest. Riddick recounted that Spence stopped, turned around, and "came at me swinging what I took to be violently toward me." In response, Riddick swung his baton striking Spence above his left eye near his temple causing it to bleed profusely. Spence continued to swing his arms at Riddick who grabbed Spence and wrestled him to the ground. Riddick handcuffed Spence and arrested him for trespassing, disorderly conduct, and resisting with violence.
During the charge conference, Spence's counsel requested that the court give the standard jury instruction for the justifiable use of nondeadly force since his theory of defense was that he struggled with Riddick merely to avoid the officer's attacks. The court denied the request.
In Kilgore v. State, 271 So.2d 148, 152 (Fla. 2d DCA 1972), this court stated:
While the evidence may not have been too strong as showing or tending to show self-defense, yet we think in fairness to the defendant on trial for two serious felonies the charge should have been given for what it was worth. It is not the quantum or the quality of the proof as to self-defense that determines the requirement for giving the charge. If any evidence of a substantial character is adduced ... the element of self-defense becomes an issue, and the jury, as the trier of the facts, should be duly charged as to the law thereon, because it is the jury's function to determine that issue.
Accordingly, this court has consistently held that where the evidence supports the defendant's theory of self defense, the defendant is entitled to jury instructions on both the justifiable use of deadly and nondeadly force. See, e.g., Garramone v. State, 636 So.2d 869, 870 (Fla. 4th DCA 1994)(It is beyond the trial court's province to weigh the evidence for the purpose of determining whether the instruction is appropriate); Kiernan v. State, 613 So.2d 1362 (Fla. 4th DCA 1993)(defendant in murder prosecution entitled to jury instruction on justifiable use of force even though defendant's stories were inconsistent with self defense theory); Cooper v. State, 573 So.2d 74 (Fla. 4th DCA 1990)(whether force used was deadly is question for the jury).
In this case, while the jury was not compelled to believe that Spence acted in self defense, there was some evidence to support his theory. As such, the above cases mandate that the trial court should have granted Spence's request for the nondeadly force instruction as well as the instruction on deadly force.
Reversed and remanded.
STONE and FARMER, JJ., concur.
NOTES
[1] Spence and Riddick had met approximately two years prior at a crime scene where Riddick was attempting to make an arrest and Spence interfered. When the officer directed Spence to leave the scene for his own safety, Spence initially refused, but later moved his car to a place approximately ten to fifteen feet from the action. Riddick and another officer were then directed to place Spence in handcuffs to restrain him.