704 So.2d 1137 (1998)
Ronald CURINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2758.
District Court of Appeal of Florida, Fifth District.
January 30, 1998.
*1138 Michael T. Kovach, Inverness, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Curington appeals from his conviction and the sentences he received after a jury found him guilty of two counts of aggravated battery committed with a deadly weapon,[1] on two separate victims. The trial court instructed the jury on the defense of justifiable use of non-deadly force. However, it refused to instruct the jury on the defense of justifiable use of deadly force because the request for the instruction was latemade at the end of closing arguments by counsel.
The evidence at trial established that the incidents giving rise to the criminal charges occurred on February 4, 1993, in a rural Hernando County area known as "The Pitts," an old phosphate mine. Young people gather there, light bonfires, drink alcohol, and generally "hang out." That night between 25 to 30 people assembled.
Based on the defense witnesses' testimony at trial, Curington and another man, Gamble, got into an argument. Gamble admitted he wanted to fight with Curington. He started the fight by throwing a lighted cigarette and beer bottle at Curington, and by approaching him, pushing him and verbally abusing him. This became the focus of the party. Others started beating and pushing Curington as well.
Curington pulled a knife on Gamble. The crowd continued beating and attacking Curington. The crowd forced him back into the woods, away from his truck. He suffered extensive injuries. He was kicked while on the ground and beaten with a tire iron all over his body. He required stitches in his hand from trying to protect himself, and block blows from beer bottles which were being broken over his head. He suffered cuts and bruises all over his body. He had bruises to both eyes, chin and lip, and was beaten so badly he had a hematoma in his right eye.
Curington, as well as other witnesses, testified that he repeatedly told the crowd to stand back and leave him alone. He said he drew the knife because there were people surrounding him and he had been hit with a lit cigarette and a beer bottle. He said he begged the group to stop beating him before either victim was injured, and before he drew his knife from his belt.
Curington further testified that he was in fear of his life and great bodily harm. He was surrounded and out numbered by a large, hostile crowd of people, capable of harming him severely. Curington testified he pulled out the knife to force the crowd back. He was swinging the knife around to keep others away from him, and did not intend to injure anyone. In fact, he did not recall cutting anyone. However, two people were cut by him: one on the hand and another on his arm, after that victim, admittedly, was kicking Curington as he lay on the ground. Curington testified he had so much blood and sweat in his eyes he could not see much, and at that time the crowd had forced him away from the fire and into the woods.
Curington's sole defense in this case was self-defense. An instruction on use of non-deadly force was given,[2] but the court *1139 refused to instruct on use of deadly force.[3] However, since Curington tried to defend himself by using a knife, the deadly force instruction was also appropriate, under the circumstances of this case.
Section 776.012, Florida Statutes (1993) provides:
Use of force in defense of person.A person is justified in the use of force, except deadly force against another, when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such imminent use of unlawful force. However, he is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony. (emphasis added)
A person is justified in using deadly force in self-defense if he or she reasonably believes such force is necessary to protect *1140 one's self from imminent death or great bodily harm. Miller v. State, 613 So.2d 530 (Fla. 3d DCA 1993); Smiley v. State, 395 So.2d 235 (Fla. 1st DCA 1981). The circumstances must be such that the defendant had cause to think loss of life or serious injury is imminent. And use of deadly force is only proper if retreat is not possible. Stewart v. State, 672 So.2d 865 (Fla. 2d DCA 1996). In this case, Curington presented sufficient evidence to create a jury issue as to each of these elements. J.Y. v. State, 332 So.2d 643 (Fla. 3d DCA 1976).
Where evidence presented at trial supports an instruction on self-defense (use of deadly force as well as non-deadly force), it is error not to give it. Garramone v. State, 636 So.2d 869 (Fla. 4th DCA 1994); Smith v. State, 424 So.2d 726 (Fla.1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); Stewart; Abbott v. State, 589 So.2d 943 (Fla. 2d DCA 1991); Spence v. State, 678 So.2d 459 (Fla. 4th DCA 1996). Cf. Deveaugh v. State, 575 So.2d 1373 (Fla. 4th DCA 1991). This appears to be a case in which instructions on both use of nondeadly force as well as deadly force were appropriate. See Howard v. State, 698 So.2d 923 (Fla. 4th DCA 1997).
The state argues that the request for the instruction on deadly force was properly denied because it was untimely, as it was not made until the end of closing arguments. Florida Rule of Criminal Procedure 3.390(c) provides that a request for a jury instruction should be made at the close of the evidence or earlier as the court reasonably directs. We have found only one case dealing with a late request for a jury instruction. In Dean v. State, 430 So.2d 491 (Fla. 3d DCA 1983), quashed on other grounds, 478 So.2d 38 (Fla. 1985), the request was made after closing argument to the jury, but the defense made no contention at trial or on appeal that the defendant was prejudiced by failure to give the instruction.
In this case, jury instructions were discussed before trial commenced, and piecemeal during the trial at bench conferences. The defense timely requested the non-deadly force instruction. After closing arguments, defense counsel requested the deadly force instruction. The state objected, and the trial judge concluded it could not add that instruction at that point. The defense never conceded that failure to give the deadly force instruction was not prejudicial. Defense counsel renewed his objection to the failure to give the requested instruction, and placed it of record, when the court completed its jury instruction and before the jury retired to deliberate.
The combination of instructions, which were and were not given in this case, had the effect of depriving Curington of any defense to the criminal charges despite evidence which would have been sufficient for an acquittal. The judge only gave the non-deadly force instruction, which required the jury to find that Curington did not use deadly force. It was also instructed that use of a deadly weapon was sufficient to convict for aggravated battery. Since the evidence at trial established without dispute that Curington used a knife in cutting the victims, the equivalent of a deadly weapon, he had no viable self-defense theory available.
Failure to give a complete instruction on self-defense, including use of deadly force, has been held to be fundamental error, where evidence at trial supports such an instruction or theory of the case. See Dawson v. State, 597 So.2d 924, 925 (Fla. 1st DCA 1992). Fundamental error exists where the omission goes to the essence of the defense. Bagley v. State, 119 So.2d 400 (Fla. 1st DCA 1960). See also Motley v. State, 155 Fla. 545, 20 So.2d 798, 800 (1945); Croft v. State, 117 Fla. 832, 158 So. 454, 455 (1935).
In this case, we do not need to find fundamental error because the instruction was proffered, although belatedly.[4] The trial judge did have an opportunity to fully instruct the jury on Curington's theory of self defense. We think that not to do so under the circumstances of this case was a breach of discretion and prejudicial to Curington's defense. Thus, Curington should be accorded *1141 a new trial. See Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945).
REVERSED and REMANDED.
DAUKSCH and ANTOON, JJ., concur.
NOTES
[1] § 784.045(2)(a)2, Fla. Stat. (1993).
[2] The trial judge stated:

An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense of which the defendant is charged if the injuries to the victims resulted from the justifiable use of force not likely to cause death or great bodily harm.
The defendant, Ronald Curington, would be justified in using force not likely to cause death or great bodily harm against the victims if the following two acts are proved: One, the defendant Ronald Curington, must have reasonably believed that suchsuch conduct was necessary to defend himself against the victims imminent use of unlawful force against the defendant, Ronald Curington. Two, the use of unlawful force by the victim must have appeared to the defendant ready to take place. Excuse me.
The use of force not likely to cause death or great bodily harm is not justifiable if you find: One, the defendant Ronald Curington, was attempted to commit, was committing or escaping after the commission of an aggravated battery. Two, the defendant, Ronald Curington, initially provoked the use of force against himself unless: (A) The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using force not likely to cause death or great bodily harm to his assailants. (B) In good faith, the defendant withdrew from physical contact with the assailants and indicated clearly to the assailants that he wanted to withdraw and stop the use of force not likely to cause death or great bodily harm, but the assailants continued or resumed the use of force.
In deciding whether or not the defendant, Ronald Curington was justified in the use of force not likely to cause death or great bodily harm, you must judge him by the circumstances by which he was surrounded at the time the force was used.
The danger facing the defendant need not have been actual; however, to justify the use of force not likely cause death or great bodily harm, the appearance of danger must have been so real that a reasonably cautious and prudent person, under the same circumstances, would have believed that the danger could have been avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.
In considering the issue of self-defense, you may take into account the relative physical abilities and capabilities of the defendant and the victim. In your consideration of the issue of self-defenseexcuse me. If, in your consideration of the issue of self-defense, you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force not likely to cause death or great bodily harm, you should find the defendant not guilty.
However, if from the evidence you are convinced that the defendant was not justified in the use of force not likely to cause death or great bodily harm, then you should find him guilty if all the elements of the charge have been proved.
[3] Florida Standard Jury Instruction (Criminal) 3.04(d) provides:

An issue in this case is whether the defendant acted in self defense. It is a defense to the offense with which (defendant)is charged if the [death of] [injury to] (victim) resulted from the justifiable use of force likely to cause death or great bodily harm.
The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:
1. another's attempt to murder him, or
2. any attempt to commit (applicable felony) upon him, or
3. any attempt to commit (applicable felony) upon any dwelling house occupied by him, or
4. any attempt to commit (applicable felony) in any dwelling house occupied by him.
A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent
1. imminent death or great bodily harm to himself or another, or
2. the imminent commission of (applicable forcible felony) against himself or another.
However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
1. (Defendant) was attempting to commit, committing or escaping after the commission of (applicable forcible felony); or
2. (Defendant) initially provoked the use of force against himself, unless:
(a) The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and has exhausted every reasonable means to escape the danger, other than using force likely to cause death or great bodily harm to (assailant).
(b) In good faith, the defendant withdrew from physical contact with (assailant) and indicated clearly to (assailant) that he wanted to withdraw and stop the use of force likely to cause death or great bodily harm, but (assailant) continued or resumed the use of force.
[4] We hasten to add that we do not condone the tardy proffering of instructions contrary to the rules, and under other circumstances we might not find reversible error in not giving them.