971 So.2d 154 (2007)
Jeremiah McWHORTER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3390.
District Court of Appeal of Florida, Fourth District.
December 12, 2007.
Carey Haughwout, Public Defender, Margaret Good-Earnest, Assistant Public Defender, West Palm Beach, and Andrew Strecker, certified to practice as a member of an out-of-state bar, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, Jeremiah McWhorter, appeals his conviction for battery, a lesser-included offense of aggravated battery. We reverse because the trial court erred in instructing the jury on self-defense. The instructions given by the court were inconsistent with the new statute, § 776.013, Fla. Stat. (2005), which expanded the right of self-defense and eliminated the "duty to *155 retreat" before using deadly force in certain circumstances.
At trial, Bertel Archibald testified that on November 19, 2005, at around 4 a.m., he and Victoria Mancin left a riverfront club in Fort Lauderdale and walked towards his car in the parking lot. They saw appellant walking to his car. Appellant drove past Archibald and Mancin and called Mancin a "whore." He left the parking lot but returned immediately afterwards. While Mancin was getting into Archibald's car, appellant walked up to Archibald and hit him on the neck. Mancin started screaming. When she tried to get in between the two men, appellant flung her down on the ground. Archibald backed away from appellant and fell on the curb. Appellant then punched Archibald several times in the face, causing Archibald to lose consciousness. Archibald had to be transported to the hospital. He suffered a broken jaw, habitual fracture and lacerations of the face; he also had to have his jaw wired shut for a month.
Victoria Mancin testified that she had known appellant since February 2002. When asked about her relationship with him, Mancin said, "We went out. We were friends." She also testified that she stayed with appellant in his home for a few weeks during her visit from Italy to Florida. When appellant attempted to cross-examine her about her deposition testimony regarding the length of her stay with appellant, the trial court sustained the state's relevancy objection.
Mancin gave basically the same account of the November 19, 2005 incident as did Archibald. She said that after the encounter with appellant began, she ran to flag down a police car for help but was unsuccessful. When she looked back, she saw that appellant was hitting Archibald, but Archibald was not fighting back. Then appellant got into his car and drove away.
Michael Greico, a former assistant state attorney in Miami-Dade County, was working as a disc jockey at a nearby club at the time of the incident. He was returning to his car in the same parking lot when heard Mancin scream and saw appellant and Archibald struggling. He saw appellant chasing Archibald, as Archibald kept backing away from appellant. When appellant struck Archibald in the face, Archibald did not fight back. After Archibald fell, appellant got on top of him and repeatedly hit him in the head, even though Archibald appeared to be unconscious. Greico flashed his flashlight at appellant, screamed at him, pulled out his badge, and called 911. Appellant returned to his car and drove off.
The state admitted into evidence a taped voicemail message that appellant left on Mancin's phone a few days after the incident in the parking lot. In the message, appellant told Mancin she "messed with the wrong guy to treat like garbage" and asked her if "[Archibald] liked meeting my fists as much as I liked beating his face because I loved every minute of kicking his butt."
Appellant testified to a different version of the incident. He said that after he left work at a nearby bar, he saw Mancin and Archibald in the parking lot and went over to talk to them. He was upset because Mancin had violated her promise not to go anywhere near appellant's workplace. He said that Mancin grabbed his shirt while they were arguing, and that Archibald hit him twice in the face without any warning. Archibald and appellant fell on the ground and during the struggle appellant hit Archibald five to seven times. Appellant explained, "[m]y intention was to protect myself to make sure that I was not getting hit again." Appellant left and saw Greico for the first time as he was leaving the parking lot. Later, he left a voicemail message *156 on Mancin's phone in response to a phone call she had made to him saying that he had messed with the wrong girl.
During the charge conference, the parties discussed jury instructions applicable to self-defense. Defense counsel requested the standard jury instruction for justifiable use of deadly force, 3.6(f). He asked, however, that the court delete the "duty to retreat" part of the instruction, based on Smiley v. State.[1] The court agreed and deleted the "duty to retreat" instruction. The court declined, however, defense counsel's request to delete the section of the standard instruction regarding the "necessity to avoid" the use of deadly force. This section, which the court read to the jury, stated that "the defendant cannot justify the use of force likely to cause great bodily harm unless he used every reasonable means within his power consistent to his own safety to avoid the danger before resorting to that source." (emphasis supplied)
The jury found appellant guilty of battery, a lesser included offense. This appeal followed.
A defendant is entitled to a jury instruction on his theory of the case if there is any evidence to support it. Spence v. State, 678 So.2d 459, 460 (Fla. 4th DCA 1996); Garramone v. State, 636 So.2d 869, 870 (Fla. 4th DCA 1994) (citing Smith v. State, 424 So.2d 726 (Fla.1982)). In instructing the jury, the trial court must ensure "that the jury is fully and correctly instructed as to the applicable law." Allen v. State, 939 So.2d 273, 276 (Fla. 4th DCA 2006); State v. Delva, 575 So.2d 643, 644-45 (Fla.1991); Stewart v. State, 420 So.2d 862, 863 (Fla.1982).
In this case, the trial court properly granted appellant's request for self-defense instructions, based on appellant's testimony that he was first attacked by Archibald and that he struck Archibald to retaliate and prevent further harm to himself. Appellant contends, however, that the trial court incorrectly instructed the jury on self-defense by telling them that appellant had to try to "avoid the danger" before using force. According to appellant, this instruction negated his defense.
The 2005 Florida Legislature's creation of section 776.013, Florida Statutes (2005), expanded the right of self-defense and abolished the common law duty to retreat when a person uses deadly force in self-defense to prevent imminent great bodily harm or death. Smiley, 927 So.2d at 1002. Section 776.013(3), Florida Statutes, states that:
[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
§ 776.013(3), Fla. Stat. (2005). Section 776.013 altered the law so that now there is "no duty to retreat" under a broad array of circumstances. Smiley v. State, 966 So.2d 330, 335 (Fla.2007).
*157 Here, the trial judge properly eliminated all express references to a "duty to retreat" from the jury instructions. But he left in language explaining that the appellant should try to "avoid the danger" before using force. To support his argument that this language should have been deleted as well, appellant points to the revised standard jury instructions for justifiable use of deadly force, which were approved by the Florida Supreme Court in May 2006, two months before appellant's trial. See In re Standard Jury Instructions in Criminal Cases (No. 2005-4), 930 So.2d 612 (Fla.2006). The revised instructions for Standard Jury Instruction 3.6(f): Justifiable Use of Deadly Force omit the "necessity to avoid" language that appellant objected to at trial.[2]Id. at 615.
We agree with appellant that the trial court's jury instructions misstated the current law applicable to self-defense. The "necessity to avoid" language would lead the jury to believe that the appellant had to use "every reasonable means within his power to avoid the danger" before he could resort to the use of force likely to cause great bodily harm. However, under section 776.013, a person who is attacked is allowed to stand his or her ground and "meet force with force." It appears that the new law places no duty on the person to avoid or retreat from danger, so long as that person is not engaged in an unlawful activity and is located in a place where he or she has a right to be. § 776.013(3), Fla. Stat. (2005). Because the jury instructions misstated the law governing appellant's sole affirmative defense of self defense, we reverse and remand for a new trial.
We have considered appellant's second point on appeal regarding impeachment of a witness by a prior inconsistent statement, but find this argument to be without merit.
Reversed and Remanded.
FARMER, J., and DAVIDSON, LISA, Associate Judge, concur.
NOTES
[1] State v. Smiley, 927 So.2d 1000 (Fla. 4th DCA 2006), held that section 776.013, Fla. Stat. (2005), which created a new right of "self-defense without the duty to retreat," does not apply to conduct committed prior to its effective date of October 1, 2005. The Florida Supreme Court approved our decision in Smiley v. State, 966 So.2d 330 (Fla.2007). The appellant's conduct in this case was allegedly committed on November 19, 2005, after the effective date of the legislation.
[2] Prior to the revisions, there was a passage recommended for use in all self-defense cases, which was called "Necessity to avoid use of deadly force" and which said,

The defendant cannot justify the use of force likely to cause death or great bodily harm unless [he][she] used every reasonable means within [his][her] power and consistent with [his][her] own safety to avoid the danger before resorting to that force.
In re Standard Jury Instructions, 930 So.2d at 616.