# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D23-509
Lower Tribunal No. 18-CF-306

_____

CARLOS LORENZO GONZALEZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Highlands County.
Angela J. Cowden, Judge.

April 19, 2024

STARGEL, J.

Carlos Lorenzo Gonzalez appeals his conviction for second-degree murder with a weapon.[1]  Gonzalez argues that reversal is necessary because (1) the trial court erroneously denied his motion for judgment of acquittal when the State failed to present sufficient evidence to prove the intent element of second-degree murder, and (2) the trial court declined to instruct the jury on justifiable use of deadly force.

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

We affirm the trial court's denial of the motion for judgment of acquittal without further discussion. As to Gonzalez's argument that the trial court erred by refusing to give the requested portion of the jury instruction on justifiable use of deadly force, we agree. While the evidence presented in support of Gonzalez's theory of the case was slight, we cannot find this error to be harmless because it goes to the heart of his theory of defense, and a jury could have found reasonable doubt under the requested instruction. Therefore, we reverse and remand for a new trial.

## I.  Background

After Gonzalez was charged with the murder of Martin Zuniga ("Zuniga"), a jury trial was held wherein the State presented the testimony of Gonzalez's wife, Ana Bosque; two detectives; a deputy sheriff; and the medical examiner. Gonzalez did not testify, nor did he present any witnesses. Bosque testified that Gonzalez and she were planning a move to Key West, so Gonzalez went to an agricultural store to find help with moving some boxes because of his recent pacemaker surgery. Gonzalez found two men who agreed to assist, one of whom was Zuniga, and after arriving back at the house, Gonzalez and the two men eventually began to drink beer together. Later, one of the men wanted to leave and Gonzalez drove him back to the store. Zuniga rode along.

After Gonzalez and Zuniga returned to the house, they continued drinking beer and rum. According to Bosque, Gonzalez and Zuniga were still drinking

2

together when she went to bed around 8:00 p.m.  Around 9:00 p.m., Gonzalez woke Bosque up so she could make sure Zuniga left the house because Gonzalez had asked him to leave.  Bosque testified that Zuniga, who had been asleep on their couch, refused to leave, so she threatened to call the police; Zuniga was quiet and groggy, and she did not hear him say anything.  Zuniga then struggled to walk to the door, and, instead of taking the porch stairs as Bosque instructed, he went the other way, fell off the porch, and landed on the ground outside.

Bosque decided to call 911 because she wanted someone to come get Zuniga out of her yard.  She testified that it took law enforcement approximately fifteen minutes to arrive at her home.  During those fifteen minutes, Gonzalez was outside.  While she was waiting inside for the police, Bosque opened the front door and saw Gonzalez outside holding a butcher knife—one she recognized as coming from her kitchen drawer.  When Gonzalez walked back inside, Bosque saw blood on the knife and made a second call to 911.  She told the dispatcher, "I have this guy in my yard.  He won't leave.  And he had a fight with my husband . . . ."  She continued, "[H]e's been—he's laying down on my ground.  I keep telling him to leave, but he won't leave . . . and he just started fighting.  He was punching my husband."

Bosque, who had not been drinking, testified that it appeared Gonzalez had been drinking, and he was "a little bit angry because," he had told her, "the guy had punched him."  She acknowledged that she did not actually see nor hear any

3

altercation even though the windows were open. After police arrived, Bosque saw Zuniga lying in the same place he had landed when he had fallen off the porch earlier.

Law enforcement found Zuniga in the front yard in a pool of blood with a stab wound in his chest. No weapons were found on or near Zuniga. The first deputy to arrive on scene asked Bosque what happened, and she stated, "My husband stabbed him." Zuniga was transported by EMS to the hospital where he ultimately succumbed to his injuries.

Detective San Miguel testified as to Gonzalez's statements to law enforcement. When questioned by police, Gonzalez indicated that he hired Zuniga and another man to help move boxes because he could not lift heavy items due to a recent pacemaker implant surgery.[2] Gonzalez brought the men to his residence to show them the job, and they drank some beer. Gonzalez then took the other man back to the store, but Zuniga returned with Gonzalez because he wanted to drink more beer. Gonzalez believed Zuniga had also been drinking when he picked him up from the store. After drinking more beer and various liquors at Gonzalez's residence, Zuniga wanted to stay the night on the couch, but Gonzalez refused, and Bosque told him to leave.

---

[2] Gonzalez's interview with police was done with Detective San Miguel, who provided Spanish translation.

Gonzalez told police that Zuniga got up and walked out the door, but when Gonzalez went outside to make sure he was gone, Zuniga was sitting down, hiding under the porch. When Gonzalez again told Zuniga to leave, Zuniga punched him in the jaw, grabbed him by the throat, and threw him to the ground. Gonzalez went inside, grabbed the knife, and came back out to scare Zuniga off, but Zuniga was standing by a ladder and grabbed him by the throat again.

When Gonzalez was asked what he did after Zuniga grabbed him by the throat, Detective San Miguel stated that Gonzalez explained:

> [H]e was grabbing him by the throat and grabbing him and punching him at the same time, whenever he had the knife in his hands, so he just went up and stabbed him. He said that – he said that his jaw was hurting from where he was getting punched. He said he didn't know what was up. It was like he was on something. He was just acting crazy. Just keeps saying he was laughing and crying and acting crazy. He swears on his grandmother's life that he had to stab him, because the guy was starting to choke him. He wouldn't let him go, and he would not leave.

Gonzalez later gave law enforcement different accounts of what led to Zuniga's stabbing. Gonzalez did not testify at trial, but his recorded statement given to the detectives while at the scene was played for the jury.

Law enforcement at the scene did not observe any injuries to Gonzalez, any grass or dirt on him, any signs of a struggle in the yard at any of the locations Gonzalez indicated an altercation took place, or any signs on Zuniga's hands indicating he had choked or punched anyone. An autopsy revealed that Zuniga's cause of death was a single eight-inch-deep stab wound to the chest. The medical

5

examiner testified it would take "some force" to penetrate that deep in the middle of Zuniga's chest. The medical examiner further testified that Zuniga had no defensive wounds and, based on the "in and out" nature of the wound, was not moving when he was stabbed. However, Zuniga had a contusion on his head suggesting he had fallen backward which, according to the medical examiner, was consistent with him falling from the porch.

The medical examiner also testified that Zuniga's blood alcohol level was at least .335—more than four times the legal limit—at the time blood was drawn, which was at least ninety minutes after the stabbing. According to the medical examiner, a blood alcohol level of .335 would probably have rendered Zuniga comatose, unconscious, or asleep, and he would have had no purposeful movement. When asked whether Zuniga could have fallen and hit his head *after* being stabbed, the medical examiner stated, "He would not be walking with this level. I doubt that he [was] walking with this level[] of alcohol."

## II. The Charge Conference and Jury Instructions

During the charge conference, the State, defense, and the trial judge agreed that Standard Jury Instruction 7.1, "Introduction to Homicide," should be given to the jury. Defense counsel submitted a written request to have Standard Jury Instruction 3.6(f) read to the jury, but the written request simply included a printout of six pages of standard instructions for various scenarios—not a document with

6

specific information for this case; however, during the charge conference, defense counsel stated that they were only asking the court to give the instructions on the first page. The first page, *in toto*, reads as follows:

> It is a defense to the crime of second-degree murder with a weapon if the actions of (defendant) constituted the justifiable use of deadly force. "Deadly force" means force likely to cause death or great bodily harm. "Great bodily harm" means great as distinguished from slight, trivial, minor or moderate harm, and as such does not include mere bruises.
>
> The use of deadly force is justifiable if defendant reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit (applicable felony) upon him.[3]

The instruction then directs the trial court to provide the elements of the applicable felony that the victim is alleged to have attempted to commit. While there are more sections of Instruction 3.6(f) that may be applicable to the facts of this case, defense counsel only requested the first page of his submission be read to the jury.[4]

---

[3] This is the applicable version of Standard Jury Instruction 3.6(f) that was in effect at the time of Gonzalez's trial. This section is based on section 782.02, Florida Statutes (1997), and the applicable felony Zuniga was allegedly attempting to commit was aggravated battery.

[4] While Gonzalez makes additional arguments that other portions of Standard Jury Instruction 3.6(f) were applicable to his case and should have been given, as noted above, defense counsel specifically advised the trial court that he only sought the instructions on the first page of his written submission of the requested instruction. Because no other portions of the instruction were requested during the charge conference, and Gonzalez does not raise fundamental error, those additional arguments are unpreserved for appellate review. *See Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) ("Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court. Furthermore, in order for an argument to be cognizable on appeal, it must have been the specific

The trial judge denied Gonzalez's motion to give the requested portion of Instruction 3.6(f), finding that Instruction 7.1 contained sufficient instructions on the justifiable use of deadly force based on the testimony and evidence and that the requested portion of Instruction 3.6(f) would have been "duplicative." Since Instruction 7.1 instructs that a homicide is justifiable "if necessarily done while resisting an attempt to murder or commit a felony," the trial court questioned defense counsel regarding the applicable felony Gonzalez asserted that Zuniga was attempting to commit against Gonzalez, and counsel responded that aggravated battery would be applicable. The prosecutor inquired whether the jury would be instructed that a punch to the face and/or grabbing of the throat is not a felony. Defense counsel indicated he believed that the packet of jury instructions, aside from his request for the portion of 3.6(f), was "sufficient" and he didn't want to "start adding issues that don't exist." The trial court responded:

> And I understand that as well, which is the reason I was concerned about using the justifiable use of deadly force, because the instruction requires the Court to insert the name and elements of the applicable felony, and a punch is a misdemeanor battery; a grabbing around the throat is a misdemeanor battery, because there is not any allegation that

contention asserted as legal ground for the objection, exception, or motion below." (citations omitted)). Moreover, even assuming the trial court had given the requested portion of the Instruction 3.6(f), Gonzalez waived any error in the failure to give the remainder of the instruction. *See Armstrong v. State*, 579 So. 2d 734, 735 (Fla. 1991) (holding that by affirmatively requesting an abbreviated instruction on excusable homicide, which the trial court gave, the defendant waived any claim of error in the instruction).

any weapon was used or that there was a loss of consciousness or that it reached the level of being a felony.

No additional instructions were given, although the parties were permitted to argue the differences between a battery and aggravated battery, provided they did not misstate the law.

At the conclusion of trial, the jury found Gonzalez guilty as charged of second-degree murder with a weapon. The trial court adjudicated Gonzalez guilty and sentenced him to life in prison.

## III. Analysis

The trial judge determined that Standard Jury Instruction 7.1 "fully encompasses the instruction to the jury so that they can understand Mr. Gonzalez's position that the killing was justifiable and lawful, if necessarily done while resisting an attempt to murder or commit a felony upon himself . . . if that were what the jury believed." Gonzalez argues that the trial court's decision to withhold the requested instruction on justifiable use of deadly force constituted reversible error because the given instruction on justifiable homicide did not identify the elements of the applicable felony, attempted aggravated battery.[5]

---

[5] Gonzalez argues that the trial court also erred by failing to give an instruction on the duty to retreat. However, defense counsel specifically advised the trial court that Gonzalez only sought the instructions on the first page of his written submission of the requested instruction, which did not include language on the duty to retreat. Because that instruction was not requested during the charge conference, this argument is unpreserved. *See Steinhorst*, 412 So. 2d at 338.

9

**Justifiable Homicide and Legal Standard for Jury Instructions**

"Florida law justifies the use of deadly force if someone 'reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.'" *Jackson v. State*, 253 So. 3d 738, 740 (Fla. 1st DCA 2018) (citing Fla. Stat. § 776.012(2)). However, "[i]n most cases, a person in a fist fight lacks a sufficient justification to use deadly force." *Jackson*, 253 So. 3d at 740. Attempted aggravated battery is a third-degree felony. *See* § 777.04(4)(d)1, Fla. Stat. (2017). Aggravated battery occurs when a person committing battery (1) intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or (2) uses a deadly weapon. § 784.045(1)(a), Fla. Stat. (2017). Here, because Zuniga was unarmed, the only way an attempted aggravated battery could have been committed upon Gonzalez was if Zuniga intentionally or knowingly attempted to cause great bodily harm.

"The question of self-defense is one of fact[] and is one for the jury to decide where the facts are disputed." *Dias v. State*, 812 So. 2d 487, 491 (Fla. 4th DCA 2002). A trial court's decision to withhold "a proposed jury instruction is reviewed under the abuse of discretion standard of review." *Aumuller v. State*, 944 So. 2d 1137, 1142 (Fla. 2d DCA 2006) (quoting *Bozeman v. State*, 714 So. 2d 570, 572 (Fla. 1st DCA 1998)). "Nevertheless, in a criminal proceeding, the trial court's

10

discretion is limited by the defendant's right to have the jury instructed on any valid theory of defense supported by record evidence." *Cliff Berry Inc. v. State*, 116 So. 3d 394 (Fla. 3d DCA 2012) (citing *Coday v. State*, 946 So. 2d 988, 994 (Fla. 2006)). "[A] defendant is 'entitled to a jury instruction on his theory of the case if there is *any* evidence to support it,' no matter how flimsy that evidence might be." *Wright v. State*, 705 So. 2d 102, 104 (Fla. 4th DCA 1998) (quoting *Garramone v. State*, 636 So. 2d 869, 870 (Fla. 4th DCA 1994)). While "[a] trial court is accorded broad discretion in formulating appropriate jury instructions," *Barton Protective Svcs., Inc. v. Faber*, 745 So. 2d 968, 974 (Fla. 4th DCA 1999), the "failure to give a requested instruction constitutes reversible error if: (1) the requested instruction accurately states the law; (2) the facts of the case support the instruction; and (3) the instruction is necessary to allow the jury to properly resolve all issues in the case." *Elder v. State*, 296 So. 3d 440 (Fla. 4th DCA 2020) (citing *Campbell v. State*, 812 So. 2d 540, 544 (Fla. 4th DCA 2002)).

"In determining whether to give the requested instruction, the trial court should consider the evidence in the main case without weighing the evidence." *Rockerman v. State*, 773 So. 2d 602, 603 (Fla. 1st DCA 2000). "The proper test is whether the charge as a whole adequately presents the law upon the issues." *Kuba v. Leb*, 464 So. 2d 601, 602 (Fla. 3d DCA 1985). "Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also

confusing or misleading." *Dockswell v. Bethesda Mem'l Hosp.*, 210 So. 3d 1201, 1214 (Fla. 2017) (quoting *Gross v. Lyons*, 721 So. 2d 304, 306 (Fla. 4th DCA 1998)).

Further, to warrant a self-defense instruction, "the defendant does not have to testify at trial; his or her statement to the police admitted into evidence may be sufficient." *Sipple v. State*, 972 So. 2d 912, 916 (Fla. 5th DCA 2007). "[I]f a jury can reasonably infer from circumstantial evidence presented at trial that the defendant had the state of mind necessary for self-defense, then the defendant is entitled to a jury instruction on self-defense." *Spurgeon v. State*, 114 So. 3d 1042, 1047 (Fla. 5th DCA 2013) (citing *Johnson v. State*, 634 So. 2d 1144, 1145 (Fla. 4th DCA 1994)).

## Justifiable Homicide's Application to this Case

The key differences between Standard Jury Instruction 7.1 and Standard Jury Instruction 3.6(f) are as follows: Instruction 7.1 states that "[t]he killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant," whereas the requested portion of Instruction 3.6(f) states, in pertinent part: "The use of deadly force is justifiable *if defendant reasonably believed* that the force was necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit (applicable felony) upon him." (Emphasis added). The requested portion of

12

Instruction 3.6(f) also includes the elements of aggravated battery as the applicable attempted felony.

Under the facts of this case, Standard Jury Instruction 7.1, on its own, was not a complete statement of the applicable law concerning the justifiable use of deadly force. If read alone, Instruction 7.1 could be understood to ask the jury to determine whether the defendant was *actually* resisting an attempt to murder or commit a felony upon him rather than whether the defendant *reasonably believed* that such force was necessary to prevent imminent death or great bodily harm. Further, if the requested instruction would have been given, the jury would have also had to determine whether Zuniga's acts of punching, grabbing by the throat, or "starting to choke" Gonzalez constituted an attempt to commit an aggravated battery. Accordingly, Standard Jury Instruction 7.1 is not duplicative of the requested portion of Standard Jury Instruction 3.6(f). In fact, under the circumstances of this case, Instruction 7.1, on its own without being read together with Instruction 3.6(f), could possibly confuse or mislead the jury as to the issue of the justifiable use of deadly force.

Gonzalez's statements to police, though inconsistent, alleged that Zuniga punched him and grabbed him by the throat, and at one point, started to choke him. Additionally, there was testimony that Gonzalez recently had surgery to insert a pacemaker, which would likely place him at a disadvantage in a physical altercation.

13

*See Montijo v. State*, 61 So. 3d 424, 427 (Fla. 5th DCA 2011) (justifiable use of deadly force instruction based on aggravated battery was merited where victim was a large individual who followed defendant to restaurant parking lot after road rage incident and was aggressive during the confrontation); *Priestley v. State*, 537 So. 2d 690, 691 (Fla. 2d DCA 1989) (noting trial court's decision to give justifiable use of deadly force instruction based on attempted aggravated battery where victim, who was younger and physically fit, knocked defendant down and repeatedly hit defendant while on top of him).[6]  Given Gonzalez's presumed heightened state of physical vulnerability and his testimony that Zuniga was starting to choke him, we find that the evidence produced at trial, though slight, was sufficient to entitle

---

[6] We recognize that the full Instruction 3.6(f) includes the following: "In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of (defendant) and (victim)."  However, that portion of the instruction was not requested.  Nevertheless, the relative physical abilities of Gonzalez and Zuniga would be relevant to the jury's determination of whether Gonzalez "reasonably believed" that the use of deadly force was necessary.

> The question under this objective evaluation of a defendant's conduct is whether, based on the circumstances as they appeared to the defendant at the time of the altercation, a reasonable and prudent person in the same position as the defendant would believe that the use of deadly force is necessary to prevent . . . the imminent commission of a forcible felony.

*Bouie v. State*, 292 So. 3d 471, 481 (Fla. 2d DCA 2020) (citing *Garcia v. State*, 286 So. 3d 348 (Fla. 2d DCA 2019)).

Gonzalez to the requested portion of Standard Jury Instruction 3.6(f), and the trial court erred when it denied same.

**Harmless Error Analysis**

Having determined it was error to refuse to give the requested portion of Standard Jury Instruction 3.6(f), it is necessary to determine whether such error was harmless. *See State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."). "The harmless error analysis is applicable to jury instructions." *Vila v. State*, 74 So. 3d at 1113 (citing *Ashland Oil, Inc. v. Pickard*, 269 So. 2d 714 (Fla. 3d DCA 1972)). "[T]he question the harmless error test asks—whether there is a reasonable possibility the error contributed to the verdict—is ultimately dependent on the individual facts of each case." *Bullington v. State*, 311 So. 3d 102, 111 (Fla. 2d DCA 2020).

The defense did not put on any testimony or introduce any evidence to refute the State's allegations. The only evidence that supported the defense's theory of the case is Gonzalez's recorded statement given to law enforcement at the scene wherein he provided conflicting and varying versions of how, where, and why the stabbing occurred.

15

During closing arguments, defense counsel advised the jury that Gonzalez felt he could have been killed or endured great bodily harm, and he had to stab Zuniga because he was defending himself. Counsel further argued that Gonzalez definitely felt his life was in danger because Zuniga was choking him, and he reminded the jury to consider the fact that Gonzalez had recently had a pacemaker implanted. Notwithstanding the remoteness that a different result may occur, our courts have long held that the "[f]ailure to give a standard jury instruction is reversible error when the omitted standard jury instruction goes to the heart of the defendant's case." *Arboleda v. State*, 645 So. 2d 48, 50 (Fla. 3d DCA 1994).

## IV.   Conclusion

While the evidence warranting the requested portion of Standard Jury Instruction 3.6(f) was slight, it was nevertheless sufficient. We find that the error in refusing to give the requested portion of the instruction goes to the heart of Gonzalez's theory of defense and was not harmless beyond a reasonable doubt. Therefore, we reverse the judgment and sentence and remand for a new trial.

REVERSED and REMANDED.

WOZNIAK, J., concurs.
MIZE, J., concurring in result, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

16

MIZE, J., concurs in result, with opinion.

I concur in the result reached in this case, which is to reverse Gonzalez's conviction and remand for a new trial. I would say more than the majority, and I emphasize three points specifically.

**I.    A defendant is entitled to a jury instruction on self-defense as a matter of right if there is any evidence at all to support the instruction.**

"Generally, a trial court's decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion." *Vila v. State*, 74 So. 3d 1110, 1112 (Fla. 5th DCA 2011). "However, in a criminal proceeding, the trial court's discretion is narrower because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support the theory and the theory is recognized as valid under Florida law." *Id.* "The trial court should not weigh the evidence when determining whether to give the requested instruction." *Spurgeon v. State*, 114 So. 3d 1042, 1047 (Fla. 5th DCA 2013). "The jury—not the trial judge—decides the weight of the evidence." *Id.*; *see also Vila*, 74 So. 3d at 1112 ("In determining whether to give a requested instruction, the trial court should consider the evidence presented without weighing the evidence, as the latter is a task for the jury."); *Elder v. State*, 296 So. 3d 440, 444 (Fla. 4th DCA 2020) ("In deciding whether to give a requested charge, a trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is *suggested* by the evidence presented. However disdainful

17

the trial judge may feel about the merits of the defense from a factual standpoint is beside the point." (emphasis in original) (internal quotations, citations omitted)). "A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is *any* evidence to support it, no matter how weak or flimsy." *Elder*, 296 So. 3d at 444 (quoting *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006) (emphasis in original)).

In the specific context of self-defense, Florida's courts have repeatedly recognized that "[t]he question of self-defense is one of fact, and is one for the jury to decide where the facts are disputed." *Vila*, 74 So. 3d at 1112 (quoting *Dias v. State*, 812 So. 2d 487, 491 (Fla. 4th DCA 2002)); *see also Radler*, 290 So. 3d at 91; *Spurgeon*, 114 So. 3d at 1047. "If there is any evidence to support a theory of self-defense, the trial court should give the requested instruction however flimsy the evidence is which supports that theory or however weak or improbable the testimony may have been." *Wagers v. State*, 199 So. 3d 1116, 1117 (Fla. 5th DCA 2016) (quoting *Arthur v. State*, 717 So. 2d 193, 194 (Fla. 5th DCA 1998) (internal quotations, alterations omitted)); *see also Taylor v. State*, 410 So. 2d 1358, 1359 (Fla. 1st DCA 1982) ("A defendant is entitled to his requested self-defense instruction regardless of how weak or improbable his testimony may have been with respect to the circumstances leading up to the battery."); *Wright v. State*, 705 So. 2d 102, 104 (Fla. 4th DCA 1998) ("[I]t is not the *quantum* or the *quality* of the proof as to self-

defense that determines the requirement for giving the charge. If *any* evidence of a substantial character is adduced . . . the element of self-defense becomes an issue, and the jury, as the trier of the facts, should be duly charged as to the law thereon, because it is the jury's function to determine that issue." (quoting *Kilgore v. State*, 271 So. 2d 148, 152 (Fla. 2d DCA 1972)) (emphasis in original); *Radler*, 290 So. 3d at 91-92 (holding that even if there was no evidence of an overt act which could reasonably have caused the defendant to fear that he would be subject to great bodily harm, the combination of activities observed by the defendant prior to his use of deadly force could provide sufficient evidence that the defendant reasonably believed that he was in danger of great bodily harm such that the defendant was entitled to a jury instruction on self-defense). "Where evidence presented at trial supports an instruction on self-defense (use of deadly force as well as non-deadly force), it is error not to give it." *Curington v. State*, 704 So. 2d 1137, 1140 (Fla. 5th DCA 1998).

Additionally, in assessing whether there is any evidence to support a theory of self-defense, no particular type of evidence is required. "[A] defendant is not required to testify at trial to receive a jury instruction on self-defense." *Spurgeon*, 114 So. 3d at 1047; *see also Wright*, 705 So. 2d at 104 ("To raise self-defense, a defendant does not have to testify directly about his intent behind an act occurring in the past, or that he made a conscious decision to defend himself in a certain way.").

19

"A defendant's statements admitted into evidence at trial may be sufficient evidence for a self-defense instruction. The cross-examination of State witnesses can also support a claim of self-defense." *Spurgeon*, 114 So. 3d at 1047; *see also Jefferson v. State*, 264 So. 3d 1019, 1028 (Fla. 2d DCA 2018). "Finally, if a jury can reasonably infer from circumstantial evidence presented at trial that the defendant had the state of mind necessary for self-defense, then the defendant is entitled to a jury instruction on self-defense." *Spurgeon*, 114 So. 3d at 1047 (citing *Johnson v. State*, 634 So. 2d 1144, 1145 (Fla. 4th DCA 1994)); *see also Jefferson*, 264 So. 3d at 1028.

In this case, as the majority opinion states, the evidence produced at trial was sufficient to entitle Gonzalez to an instruction regarding self-defense. Gonzalez's statement given to police at the scene, if given credence by the jury, could have served as a basis for the jury to find that a reasonable doubt existed as to whether Gonzalez acted in lawful self-defense.

II. **Standard Jury Instruction 7.1 is not a substitute for a trial court giving the entirety of all applicable portions of Standard Jury Instruction 3.6(f).**

When there is any evidence to support a theory of self-defense, the trial court must give an instruction on self-defense and that instruction must be an accurate statement of the law.

"[T]he yard stick by which jury instructions are measured is clarity, for jurors must understand fully the law that they are expected to apply fairly." *State v. Floyd*, 186 So. 3d 1013, 1018 (Fla. 2016) (quoting *Perriman v. State*, 731 So. 2d 1243, 1246

20

(Fla. 1999)). "[T]rial courts should not give instructions that are confusing, contradictory, or misleading." *Floyd*, 186 So. 3d at 1018 (citing *Butler v. State*, 493 So. 2d 451, 452 (Fla. 1986)). "[W]here an instruction is confusing or misleading, prejudicial error occurs where the jury might reasonably have been misled and the instruction caused them to arrive at a conclusion that it otherwise would not have reached." *Brown v. State*, 11 So. 3d 428, 432 (Fla. 2d DCA 2009), *approved sub nom. Gutierrez v. State*, 177 So. 3d 226 (Fla. 2015) (quoting *Tinker v. State*, 784 So. 2d 1198, 1200 (Fla. 2d DCA 2001)); *Barthelemy v. Safeco Ins. Co. of Ill.*, 257 So. 3d 1029, 1031 (Fla. 4th DCA 2018) ("Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading." (quoting *Gross v. Lyons*, 721 So. 2d 304, 306 (Fla. 4th DCA 1998))).

Applying the foregoing standard, it is clear that Standard Jury Instruction 7.1 is never a substitute for a trial court giving the entirety of all portions of Standard Jury Instruction 3.6(f) applicable to a particular case. The differences between the two instructions are enormous, and Standard Jury Instruction 7.1 is never sufficient in a case in which a jury instruction on self-defense is warranted. Comparing the two instructions as they applied in this case illustrates the point well.

Standard Jury Instruction 7.1 includes only a brief introduction to Justifiable Homicide. Specifically, Standard Jury Instruction 7.1 states, in pertinent part:

> The killing of a human being is justifiable homicide and lawful if
> necessarily done while resisting an attempt to murder or commit a

21

felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing.

Standard Jury Instruction 3.6(f), which is the primary standard jury instruction concerning the Justifiable Use of Deadly Force, includes significantly more information. Instruction 3.6(f) provides in pertinent part:

It is a defense to the crime of second-degree murder with a weapon if the actions of (defendant) constituted the justifiable use of deadly force. "Deadly force" means force likely to cause death or great bodily harm. "Great bodily harm" means great as distinguished from slight, trivial, minor or moderate harm, and as such does not include mere bruises.

The use of deadly force is justifiable if defendant reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit (applicable felony) upon him.[7]

The instruction then calls for the trial court to provide the elements of the applicable felony that the defendant alleges the victim attempted to commit. Instruction 3.6(f) then continues:

(Defendant) was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or the imminent commission of (applicable forcible felony listed in § 776.08, Fla. Stat.) against himself. If defendant was not otherwise engaged in criminal activity and was in a

---

[7] This is the version of Standard Jury Instruction 3.6(f) that was in effect at the time of Gonzalez's trial. Instruction 3.6(f) has since been amended slightly, but none of the amendments are material to this case. The instruction is stated as it would have been read at trial given the circumstances of this case. This portion of the instruction is based on section 782.02, Florida Statutes (1997). The applicable felony that Gonzalez argued that Zuniga attempted to commit was aggravated battery.

place he had a right to be, then he had no duty to retreat and had the right to stand his ground.[8]

The instruction then calls for the trial court to provide the elements of the applicable felony that the defendant alleges the victim was about to commit, if applicable. The instruction then continues:

> In deciding whether defendant was justified in the use of deadly force, you must consider the circumstances by which he was surrounded at the time the force was used. The danger need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, defendant must have actually believed that the danger was real. However, the defendant had no duty to retreat if he was not otherwise engaged in criminal activity and was in a place where he had a right to be.

After other portions of Standard Jury Instruction 3.6(f) that are not relevant to this case, the instruction continues as follows:

> If you find that (defendant), who because of threats or prior difficulties with (victim), had reasonable grounds to believe that he was in danger of death or great bodily harm at the hands of victim, you may consider this fact in determining whether the actions of (defendant) were those of a reasonable person.

---

[8] This portion of the instruction is based on sections 776.012(2) and 776.031(2), Florida Statutes (2014). The Standard Instruction states that this portion of the instruction applies when the defendant is not in a dwelling or residence or when the defendant was in a dwelling or residence but had no right to be there. In this case, the altercation occurred on Gonzalez's property but not in a dwelling. There are other portions of Standard Jury Instruction 3.6(f) that are not relevant to this case.

If you find that at the time of the alleged second-degree murder with a weapon, (defendant) knew that (victim) had committed an act or acts of violence, you may consider that fact in determining whether (defendant) reasonably believed it was necessary for him to use deadly force.

In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of (defendant) and (victim).

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether (defendant) was justified in the use of deadly force, you should find him not guilty.

However, if from the evidence you are convinced beyond a reasonable doubt that (defendant) was not justified in the use of deadly force, you should find him guilty if all of the elements of the charge have been proved.

To understand why Standard Jury Instruction 3.6(f) is required and Standard Jury Instruction 7.1 is woefully inadequate, it is useful to set forth the applicable law concerning the justifiable use of deadly force. The Florida Statutes contain multiple provisions concerning the use of deadly force in self-defense, three of which are relevant to this case. First, Section 776.012, Florida Statutes, entitled "Use or threatened use of force in defense of person," provides in pertinent part:

A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

24

§ 776.012(2), Fla. Stat. (2014).  Section 776.031, Florida Statutes, entitled "Use or threatened use of force in defense of property," provides in pertinent part:

> A person is justified in using or threatening to use deadly force only if he or she reasonably believes that such conduct is necessary to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

§ 776.031(2), Fla. Stat. (2014).  Finally, within Chapter 782 of the Florida Statutes, which governs homicide, Section 782.02, entitled "Justifiable use of deadly force,", provides:

> The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or her or upon or in any dwelling house in which such person shall be.

§782.02, Fla. Stat. (1997).

Each of these statutes provides a separate possible legal basis upon which the use of deadly force may be justified.  Both sections 776.012(2) and 776.031(2) apply when a person "reasonably believes" that certain circumstances are present.  In the case of section 776.012(2), the person must reasonably believe "that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony."   In the case of section 776.031(2), the person must reasonably believe "that such conduct is necessary to prevent the imminent commission of a

25

forcible felony." Because these statutes apply when a person "reasonably believes" that the required circumstances are present, Florida courts have made clear that while reasonableness is an objective standard, whether the person's belief was objectively reasonable must be determined from the point of view of the person at the time the person used the deadly force. *See Oquendo v. State*, 357 So. 3d 214, 217 (Fla. 2d DCA 2023) ("The conduct of a person acting in self defense is measured by an objective standard, but the standard must be applied to the facts and circumstances as they appeared at the time of the altercation to the one acting in self defense." (quoting *Shreiteh v. State*, 987 So. 2d 761, 763 (Fla. 4th DCA 2008))); *State v. Quevedo*, 357 So. 3d 1249, 1253 (Fla. 3d DCA 2023) ("Thus the objective standard of what is reasonable must be measured in light of the facts and circumstances as they appeared and were known to the individual defendant."); *Cummings v. State*, 310 So. 3d 155, 158 (Fla. 2d DCA 2021) ("The question under this objective evaluation of a defendant's conduct is whether, based on the circumstances as they appeared to the defendant at the time of the altercation, a reasonable and prudent person in the same position as the defendant would believe that the use of deadly force is necessary to prevent imminent death or great bodily harm or the imminent commission of a forcible felony." (quoting *Bouie v. State*, 292 So. 3d 471, 481 (Fla. 2d DCA 2020))); *Viera v. State*, 163 So. 3d 602, 604 (Fla. 3d DCA 2015) ("[T]he objective standard . . . requires the court to determine whether, based on

circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant."); *Mobley v. State*, 132 So. 3d 1160, 1164–65 (Fla. 3d DCA 2014) ("That standard requires the court to determine whether, based on circumstances as they appeared to the defendant when he or she acted, a reasonable and prudent person situated in the same circumstances and knowing what the defendant knew would have used the same force as did the defendant."); *Price v. Gray's Guard Serv., Inc.*, 298 So. 2d 461, 464 (Fla. 1st DCA 1974) ("The conduct of a person acting in self defense is measured by an objective standard, but the standard must be applied to the facts and circumstances as they appeared at the time of the altercation to the one acting in self defense. A person acting in self defense is not held to the same course of conduct which might have been expected had he been afforded an opportunity of cool thought as to possibilities, probabilities and alternatives.").

At the charging conference in this case, the trial judge repeatedly questioned Gonzalez's counsel regarding what applicable felony Gonzalez asserted that Zuniga was attempting to commit against Gonzalez. However, the commission of a felony against Gonzalez was not the only circumstance which could have justified his use of deadly force. As explained above, section 776.012(2), Florida Statutes, provides that "[a] person is justified in using or threatening to use deadly force if he or she

27

reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another **or** to prevent the imminent commission of a forcible felony." (emphasis added). Therefore, if Gonzalez reasonably believed that using deadly force was necessary to prevent death or great bodily harm to himself, he was justified in using deadly force to prevent such harm whether or not Zuniga was attempting to commit a forcible felony against Gonzalez. If Gonzalez reasonably believed that using deadly force was necessary to prevent the imminent commission of a forcible felony, that could provide an additional or alternative justification for the use of deadly force, but a reasonable belief that deadly force was necessary to prevent the commission of a forcible felony is not necessary where the defendant had a reasonable belief that using deadly force was necessary to prevent death or great bodily harm to himself.

Moreover, whether Gonzalez had a reasonable belief that using deadly force was necessary to prevent death or great bodily harm to himself was required to be judged from Gonzalez's perspective at the time that he stabbed Zuniga. In this case, Gonzalez told police that: (1) Zuniga grabbed Gonzalez by the throat and punched Gonzalez in the jaw multiple times; (2) Zuniga was choking Gonzalez and would not let go; and (3) due to Zuniga choking and beating Gonzalez, he had to stab Zuniga to defend himself. At this time, Gonzalez was also in a reduced physical capacity and a heightened state of physical vulnerability after having recently had

28

surgery and having a pacemaker installed in his heart. In determining whether a reasonable doubt existed as to whether Gonzalez's belief was reasonable, the jury was entitled to take into account the relative physical abilities of Gonzalez and Zuniga because Gonzalez's reduced physical capacity and heightened vulnerability to physical harm were known to Gonzalez at the time that he stabbed Zuniga. *See* Fla. Std. Crim. Jury Instr. 3.6(f) ("In considering the issue of self-defense, you may take into account the relative physical abilities and capacities of (defendant) and (victim)."); *Floyd*, 186 So. 3d at 1020–21 (holding that Standard Jury Instruction 3.6(f) correctly states the law regarding the justifiable use of deadly force). Given Gonzalez's heightened state of physical vulnerability and his testimony that Zuniga was grabbing him by the throat, choking him, punching him in the jaw and beating him, a jury could have concluded that a reasonable doubt existed as to whether Gonzalez possessed a reasonable belief that his use of deadly force was necessary to prevent death or great bodily harm to himself.

As noted in the majority opinion, the trial judge recognized at the charging conference that Gonzalez was entitled to an instruction on the justifiable use of deadly force, but the trial judge determined that Standard Jury Instruction 7.1 was an accurate statement of the law regarding the justifiable use of deadly force and that Standard Jury Instruction 3.6(f) would have been duplicative. This was error, because on its own, Standard Jury Instruction 7.1 was not an accurate statement of

29

the applicable law concerning the justifiable use of deadly force and, in fact, was incomplete, confusing and misleading.

The differences between Standard Jury Instruction 7.1 and Standard Jury Instruction 3.6(f), and the deficiencies in Instruction 7.1, are obvious from even a cursory reading of both instructions. To begin with, Instruction 7.1 does not instruct the jury, in accordance with the statutes detailed above, that a person is justified in using deadly force if the person reasonably believes that deadly force is necessary to prevent imminent death[9] or great bodily harm to himself.

Additionally, unlike Instruction 3.6(f), Instruction 7.1 does not inform the jury that the issue of self-defense is determined from the point of view of the defendant at the time the defendant used deadly force, including taking into account the relative physical differences between the two parties that were known to the defendant when the defendant used deadly force. On its own, without being read together with Instruction 3.6(f), Instruction 7.1 in fact could be read to instruct the jury that the issue of self-defense is not determined from the point of view of the defendant. Instruction 7.1 states that "[t]he killing of a human being is justifiable homicide and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant." This instruction could be understood to ask the jury to

---

[9] While Instruction 7.1 references "murder," "murder" is a narrower category than "death." A person who commits voluntary manslaughter imposes death on the victim but does not commit "murder."

determine whether the defendant was actually resisting a murder or felony rather than whether the defendant reasonably believed that he was resisting a murder or felony.[10]

Instruction 7.1 also fails to inform the jury that Gonzalez had no duty to retreat if he was not otherwise engaged in criminal activity and was in a place he had a right to be. In fact, Instruction 7.1 could be read to imply that Gonzalez did have a duty to retreat. Again, Instruction 7.1 states that "[t]he killing of a human being is justifiable homicide and lawful if *necessarily* done while resisting an attempt to murder or commit a felony upon the defendant." (emphasis added). The use of the term "necessarily" in Instruction 7.1, without being read together with Instruction 3.6(f), could have caused the jury to conclude that Gonzalez had a duty to retreat because his use of deadly force was not necessary if he had the ability to retreat in safety.

For all of these reasons, Standard Jury Instruction 7.1 was not an accurate statement of the law of self-defense as it applied to this case.

## III. Gonzalez did not forfeit his right to self-defense by exiting his house to confront Zuniga with a knife.

I discuss this point separately to highlight its importance. In addition to all of the foregoing reasons that Instruction 7.1 was inadequate, the use of the word

---

[10] Also, as explained above, resisting a murder or felony are not the only justifications for the use of deadly force.

"necessarily" in Instruction 7.1 could also have led the jury to believe that the fact that Gonzalez went into his house and came back out of the house with a knife to confront Zuniga negated Gonzalez's right to use deadly force. After all, it was not "necessary" for Gonzalez to come back out of his house armed with a knife after he had safely retreated into his home. However, under the United States Constitution and the laws of the State of Florida, Gonzalez was not required to stay in his home while Zuniga trespassed on Gonzalez's property. Gonzalez was entitled to confront Zuniga as a trespasser. Gonzalez going into his house and coming back out to confront Zuniga with a knife did not negate Gonzalez's right to use deadly force if he had a reasonable belief that such force was necessary to prevent death or great bodily harm to himself.

The United States Constitution guarantees an individual right to keep and bear arms. *D.C. v. Heller*, 554 U.S. 570, 595 (2008). "Central to this right, as the Supreme Court explained in *Heller*, is the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Burns v. State*, 361 So. 3d 372, 376 (Fla. 4th DCA 2023) (quoting *Heller*, 554 U.S. at 635 (internal quotations omitted)).

Knives are arms. *See State v. Montalvo*, 162 A.3d 270, 284 (2017); *State v. DeCiccio*, 105 A.3d 165, 190-97 (2014); David B. Kopel, Clayton E. Cramer, & Joseph Edward Olson, *Knives and the Second Amendment*, 47 U. Mich. J. L. Reform 167, 214 (2013).

Florida grants an individual state constitutional right to bear arms, Art I, § 8(a), Fla. Const., and also an explicit statutory right to "own, possess and lawfully use . . . weapons," including knives, at a person's "home or place of business" without any restriction against the open carrying of such weapons or any requirement to obtain a permit. § 790.25(3)(n), Fla. Stat. (2006)[11]; § 790.001(13), Fla. Stat. (2016) (defining "weapon" for purposes of Chapter 790, Florida Statutes, to include knives)[12]; *see also Burns*, 361 So. 3d at 377. Thus, an individual in Florida has an explicit statutory right to openly carry a knife (or firearm) on his or her own home property.

Pursuant to Section 790.25(3)(n) and the Constitutions of Florida and the United States, Gonzalez had the right to openly carry his knife on his own home property as he demanded that Zuniga leave his property. Additionally, once Zuniga refused to leave Gonzalez's property after being asked to do so, Zuniga became a trespasser, thereby justifying Gonzalez's right to use non-deadly force, including his constitutional and statutory right to openly carry or display his knife, to assist him in terminating the trespass. *See Burns*, 361 So. 3d at 377 (citing § 776.031(1), Fla.

---

[11] This is the version of the statute that was in effect on the night of the incident at issue in this case. Section 790.25 has since been amended but the statutory right of an individual to "own, possess and lawfully use . . . weapons" at a person's "home or place of business" remains in subsection 2(n) of the amended statute.

[12] This is the version of the statute that was in effect on the night of the incident at issue in this case. Section 790.001 has since been amended, but the definition of "weapon" has not changed. *See* § 790.001(20), Fla. Stat. (2023).

Stat. (2020) (justifying the use or threatened use of non-deadly force, "when and to the extent" necessary, "to prevent or terminate" another's "trespass on" the non-dwelling portions of one's "real" or "personal property")); *Howard v. State*, 698 So. 2d 923, 925 (Fla. 4th DCA 1997) (holding that the display of a knife, without more, is non-deadly force, not deadly force); *see also Cunningham v. State*, 159 So. 3d 275, 277 (Fla. 4th DCA 2015) (stating that, as a matter of law, "the *mere display of a gun is not deadly force*." (emphasis in original)).

While it certainly may not have been advisable for Gonzalez to go back outside with a knife after he had already safely entered his home, he was within his legal rights to do so and he did not forfeit his legal right to use deadly force if he had a reasonable belief that such force was necessary to prevent death or great bodily harm to himself. What actually happened after Gonzalez went back outside and whether Gonzalez had a reasonable belief that his use of deadly force was necessary to prevent death or great bodily harm to himself or the commission of a felony against himself was a question for the jury to resolve after being properly instructed on the justifiable use of deadly force, which Standard Jury Instruction 7.1 did not accomplish.

## IV.  Conclusion.

Gonzalez was entitled to a jury instruction concerning self-defense as a matter of right because there was evidence in the record to support a theory of self-defense.

The standard jury instruction approved by the Florida Supreme Court for self-defense is Instruction 3.6(f), and the trial court erred by failing to give it. Standard Jury Instruction 7.1 is not "duplicative" of Standard Jury Instruction 3.6(f). In fact, Instruction 7.1, on its own without being read together with Instruction 3.6(f), is woefully inadequate. Standard Jury Instruction 3.6(f) provides a complete and accurate instruction regarding the justifiable use of deadly force, and trial courts err by refusing to give the instruction in cases in which there is any evidence to support a theory of self-defense. Accordingly, I concur in the result reached in this case, which is to reverse Gonzalez's conviction and remand this case to the trial court to conduct a new trial. On remand, if the complete Standard Jury Instruction 3.6(f) is requested, it should be given.

_____

Howard L. "Rex" Dimmig, II, Public Defender, and Kevin Briggs, Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Katherine Coombs Cline, Senior Assistant Attorney General, Tampa, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED