BENTON, J.
We affirm Robert Rockerman’s conviction for burglary of a dwelling with the intent to commit assault or battery therein in violation of section 810.02(1), Florida Statutes (1997). In doing so, we reject his contention that the trial court erred when it declined to instruct the jury on the justifiable use of non-deadly force. No substantive evidence supported this affirmative defense.
A defendant is entitled, upon request, to a jury instruction on any theory of defense the substantive evidence supports. See Arthur v. State, 717 So.2d 193, 194 (Fla. 5th DCA 1998); Williams v. State, 588 So.2d 44, 45 (Fla. 1st DCA 1991); Smiley v. State, 395 So.2d 235, 236 (Fla. 1st DCA 1981). In determining whether to give the requested instruction, the trial court should consider the evidence in the main case without weighing the evidence. See Kiernan v. State, 613 So.2d 1362, 1364 (Fla. 4th DCA 1993); Kilgore v. State, 271 So.2d 148, 152 (Fla. 2d DCA 1972). Weighing the evidence is the province of the jury. See Spence v. State, 678 So.2d 459, 460 (Fla. 4th DCA 1996). “It is axiomatic that a defendant is entitled to a jury instruction on the theory of his defense if there is evidence in the record to support it.” Holley v. State, 423 So.2d 562, 564 (Fla. 1st DCA 1982); see Williams, 588 So.2d at 45; Solomon v. State, 436 So.2d 1041, 1041 (Fla. 1st DCA 1983). At issue in the present case is whether evidence offered solely for purposes of impeachment by prior inconsistent statements is properly viewed as support for an affirmative defense.
One Frank McFarland, among others, testified that Mr. Rockerman opened Nellie Redson’s screen door, pushed past her, grabbed Mr. McFarland, dragged him outside and hit him in the eye. On cross-examination, Mr. McFarland denied having attacked or having told anyone that he had attacked Mr. Rockerman:
Q. Okay. Now, isn’t it true that when Mr. Rockerman came up on the porch *604 you came out on the porch and attacked him?
A. No, sir, I did not.
Q. Isn’t it true that Mr. Rockerman, who’s larger than you, pushed you aside and you attacked him a second time?
A. No, sir.
Q. And isn’t it true that Mr. Rocker-man pushed you aside a second time and told you, “If you attack me again, I’m going to defend myself’?
A. No, sir.
Q. Shortly after this incident, do you remember having a conversation with Mike Powers and Connie White?
A. Yes, sir.
Q. Do you remember telling Mike Powers in the presence of Connie White that you attacked Mr. Rockerman on the porch?
A. No, sir.
The jury was entitled to conclude that, as the information alleged, Mr. Rockerman entered Nellie Redson’s home on December 21, 1998, without her consent, and battered Frank McFarland first inside then outside on the porch; and that he did so without physical provocation.
Explicitly for the purpose of impeaching Mr. McFarland’s testimony by trying to prove prior, inconsistent statements, the defense called two witnesses, Miguel Patrick Powers and Connie Ann White. Assured that their testimony was offered solely for impeachment, the prosecution abandoned any hearsay objection. Mr. Powers testified that Mr. McFarland told him that
he had told Robert to leave the property when he came over and Robert said he wanted to talk to Randie Bowers and at that point he shoved on Robert and asked him to leave. Again, he said, “Look, I’m just here to see Randie. She just called me.” And at that point he turned around and told him that he wanted him to leave again and he jumped on Robert.
Ms. White testified that she was present when the conversation between Mr. Powers and Mr. McFarland took place and that she heard Mr. McFarland say that he had pushed Mr. Rockerman. The defense never sought to have the testimony of either witness admitted for any purpose other than impeachment.
“[A] prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt.” State v. Moore, 485 So.2d 1279, 1281 (Fla.1986). See Joyce v. State, 664 So.2d 45 (Fla. 3d DCA 1995); Santiago v. State, 652 So.2d 485 (Fla. 5th DCA 1995); McNeil v. State, 433 So.2d 1294, 1295 (Fla. 1st DCA 1983) (holding that “although the statement was properly admitted for impeachment purposes, it was not substantive evidence of appellants’ guilt”); Kimbler v. State, 360 So.2d 1270, 1270 (Fla. 1st DCA 1978) (reversing on grounds that “extrajudicial testimony ... with which the state attempted to impeach ... cannot be considered as competent evidence on the charge against appellant”). Similarly, an affirmative defense cannot rest on evidence offered solely to impeach a witness by proving prior, inconsistent statements.
Here defense counsel conceded at trial that the testimony of both defense witnesses was admissible only for impeachment purposes, and undertook to instruct them to limit their testimony accordingly. See § 90.608(l)(a), Fla. Stat. (1999); see generally Charles W. Ehrhardt, Florida Evidence § 608.4, at 434-35 (1999) (“Section 90.608(l)(a) recognizes the most common method of impeachment, by showing that a witness has made a statement prior to the trial that is inconsistent with the testimony of the witness at the. trial. The argument is not that the prior statement is true and the testimony in court is false, but that because the witness has not told the truth in one statement, the jury should disbelieve both statements.” (footnotes omitted)). In legal contemplation, the testimony was offered not to show that Mr. Rockerman acted in self-defense, but only to show that Mr. McFarland was not to be believed. See generally Wingate v. New *605 Deal Cab Co., 217 So.2d 612, 614 (Fla. 1st DCA 1969).
The defense nevertheless requested that the jury be instructed on the affirmative defense of justifiable use of non-deadly force. When the state objected, the trial court denied the request
because the statements of the defense witnesses as to the comments made by the State’s witness, if taken as true, I think, did not raise the issue of self-defense. But even if it did, I don’t think that it would justify an instruction on self-defense in this case because there is no affirmative evidence of any issues of defense. The State’s witnesses denied making the statement and the testimony of the defense witnesses was taken only for the purpose of impeaching that witness. It doesn’t establish any affirmative evidence. It’s purely hearsay to establish anything that’s admissible. It’s only to discredit the testimony of the witness.
We find no error in the learned trial judge’s ruling. Because the only evidence even arguably supporting justifiable use of non-deadly force as a defense was adduced for impeachment purposes only, the trial court did not err in declining to give the requested instruction.
Affirmed.
MINER and ALLEN, JJ., CONCUR.