# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3214
Lower Tribunal No. 22CF000847AOR

_____

MARIA D. ORTIZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Patricia L. Strowbridge, Judge.

July 18, 2025

MIZE, J.

Appellant, Maria D. Ortiz ("Ortiz"), appeals her conviction and sentence for battery on a person 65 years of age or older. She asserts that the trial court erred when it forced her counsel to concede in closing argument that she had committed the offense of battery as a condition of the trial court giving a jury instruction on

self-defense.  We agree this was error.  Accordingly, we reverse Ortiz's conviction and remand this case to the trial court to conduct a new trial.[1]

## Background and Procedural History

The alleged victim in this case, Dorothy Graham ("Graham"), who was 76 at the time of the incident giving rise to this case, owned several rental houses located in the same neighborhood.  Ortiz rented a room in one of Graham's rental houses.  On the day of the incident, Ortiz was visiting another tenant at a nearby house when Graham arrived to collect rent from a tenant in that residence.  After Graham knocked on the door, a different tenant invited Graham inside the house and showed Graham to the tenant's room, where Ortiz was present.

At some point, Ortiz and Graham began arguing.  Graham testified at the trial below that she asked Ortiz to step outside of the house in hopes of deescalating the encounter and because she did not want an altercation in front of her other tenants.  Graham and Ortiz walked down the hallway of the house with Ortiz walking behind Graham.  Graham testified at trial that Ortiz punched Graham in her back and the back of her head as they walked down the hallway, although Graham gave a statement to police at the scene that day in which she did not mention Ortiz hitting her while they were in the house.

---

[1] Ortiz also argues that the trial court erred by denying her motion for judgment of acquittal.  We find no error with respect to this issue and affirm the denial of Ortiz's motion for judgment of acquittal.

When Graham and Ortiz got outside of the house and onto the porch, there was indisputably a physical altercation. Graham testified that Ortiz punched Graham in the face and eye and that Ortiz tried to push Graham over the railing of the porch, which was approximately two-to-three feet tall. Graham testified that she tried to defend herself.

Two other tenants of Graham's houses witnessed the altercation. One of those tenants, Joseph Mahoney ("Mahoney"), testified at trial that he did not see how the altercation started but he ran to the house where it occurred when he saw Ortiz and Graham struggling with each other on the porch. According to Mahoney, Graham and Ortiz were facing each other, and Graham's back was to the railing of the porch. Ortiz had her hands on Graham's shoulders and was pushing Graham to the point that Graham was close to going over the railing. Graham was also holding on to Ortiz's shoulders. Ortiz struck Graham in the face multiple times. Ortiz and Graham moved back into the house while still holding onto each other. At some point, the altercation ended and Graham came out of the house alone.

Deputy James Waters ("Deputy Waters") of the Orange County Sheriff's Office responded to the incident and his body-worn camera recorded his conversations with both Ortiz and Graham. As the trial judge and counsel for the parties noted during the trial, Ortiz's statements to Deputy Waters in the recording were difficult to understand due to the poor audio quality of the recording. However,

3

some of Ortiz's statements could be understood and were transcribed into the trial transcript. During their conversation, Ortiz told Deputy Waters that, "Yeah, and [Graham] came to try and put her hands – she invited me outside and then went to put her hands on me. And I told her, don't make me hurt you, don't put your hands on me, because I will hurt you." In the midst of some arguably inaudible statements, Ortiz also said, "Then she puts her hands on me" and "I told her, don't touch me." Some of Ortiz's other statements in the recording which could not be clearly heard could also have plausibly been understood by a listener as statements that Graham touched Ortiz without Ortiz's consent. During his trial testimony, Deputy Waters confirmed that during his conversation with Ortiz at the scene of the incident, Ortiz said that she told Graham not to touch her and that "Graham had put her hands on her."

Deputy Waters also spoke with Graham at the scene. During their conversation, Graham never reported being hit in her back or her head in the hallway.

The State charged Ortiz by Information with a single count of battery on a person 65 years of age or older, and a trial was conducted. At the charge conference, the defense requested that the jury be given an instruction on self-defense based on Ortiz's statements shown in Deputy Waters's body camera recording, Deputy Waters's testimony that Ortiz told him that she told Graham not to touch her and that "Graham had put her hands on her," and Mahoney's testimony that Graham was

4

holding onto Ortiz's shoulders during the altercation. Defense counsel also indicated that they intended to argue to the jury that the State did not prove beyond a reasonable doubt that the battery in the hallway occurred because there was no corroboration of Graham's testimony, and she did not tell Deputy Waters at the scene of the incident that Ortiz hit her in the hallway.

In response to the defense's request for a self-defense instruction, the trial court stated:

> So self-defense is an affirmative defense and so I'm not sure that you can maintain that no contact occurred and maintain that it was self-defense at the same time. I mean, an affirmative defense, by its nature, is an acknowledgment that the act occurred and this is the defense to why it occurred. So if the argument is, Ms. Ortiz never touched her, then you don't have a self-defense, do you, you have a straight defense that it didn't happen?
>
> . . . .
>
> I don't think you can argue in the alternative. I don't think you can say, first, it didn't happen and they haven't met their burden of proof and, second, if they did, it was self-defense. Don't you have to pick your path?

In response, defense counsel argued that the defense had not argued during the trial and did not intend to argue in closing that no contact occurred. The trial court responded that while defense counsel had not made that argument during the trial, Ortiz stated in one part of her statement to Deputy Waters at the scene that she did not touch Graham. The defense responded that while the State could rely on inconsistent statements in Ortiz's statement to the police as evidence, the defense

5

never took the position at trial that Ortiz never touched Graham. Defense counsel further argued that there were other parts of her statement to Deputy Waters in which Ortiz asserted that Graham touched Ortiz and that Ortiz acted in response, and these statements were sufficient to warrant a jury instruction on self-defense.[2]

Although it had initially opposed the defense's request for a jury instruction on self-defense, upon hearing the defense's argument, the State changed its position. The State stated that it had reviewed *Calkins v. State*, which states that "[a] criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is any evidence to support it, no matter how weak or flimsy." 170 So. 3d 888, 890 (Fla. 4th DCA 2015) (quoting *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006)). Based on that authority, the State withdrew its objection to the defense's request for a jury instruction on self-defense.

Despite the State withdrawing its objection to the defense's request, the trial court stated that it needed additional time to examine the issue. The trial court stated:

> It's being presented in a somewhat unorthodox manner in that this is not testimony, but is rather a statement made by the defendant on body-worn camera and presented by the State, not presented by the defense. The defense has a duty to present prima facie evidence. The defense isn't presenting any evidence. It was presented by the State.

In response, defense counsel cited to *Spurgeon v. State*, which states:

---

[2] It is evident from the trial transcript that some of the confusion regarding the content of Defendant's statements to Deputy Waters resulted from the poor audio quality of Deputy Waters's body-worn camera video.

[A] defendant is not required to testify at trial to receive a jury instruction on self-defense. A defendant's statements admitted into evidence at trial may be sufficient evidence for a self-defense instruction. The cross-examination of State witnesses can also support a claim of self-defense. Finally, if a jury can reasonably infer from circumstantial evidence presented at trial that the defendant had the state of mind necessary for self-defense, then the defendant is entitled to a jury instruction on self-defense.

114 So. 3d 1042, 1047 (Fla. 5th DCA 2013) (internal citations omitted). In response, and despite the State's concession that a criminal defendant is entitled to a jury instruction where there is any evidence to support it, the trial court discussed and weighed the evidence that had been presented and questioned whether the quality of Ortiz's evidence regarding self-defense was sufficient to warrant a self-defense instruction, stating, "I can't tell. I think it's legitimately arguable from both directions." The trial court then adjourned for the day so that it could further research the issue before ruling on the defense's request for the jury instruction on self-defense.

When the charge conference continued the next day, the trial court ruled that Ortiz was not entitled to a jury instruction on self-defense unless Ortiz affirmatively admitted to the jury that Ortiz committed the offense of battery. The trial court stated:

You can't argue in the alternative when they are contradictory to each other. And so self-defense is an affirmative defense, it's an admission -- or a confession and avoidance, and so if that's where we're going with this, then we're going to need to deal with whether or not Ms. Ortiz is on board with the acknowledgment that a battery occurred, which is

7

not what was argued in opening. And so the case law is pretty clear also that if you're arguing self-defense, you're acknowledging that the battery occurred and you cannot alternatively argue that the battery didn't occur. Those are contradictory to each other.

So where that leaves me is, there's been no argument from the defense that the battery occurred and it was justified based on self-defense, so I think that that depends upon what's going to be argued in closing. And so if it's argued in closing that the State has failed to establish the battery, then the instruction will not be given. If it's argued in closing that the State has established a battery, but it was justified and you focus on that, then the instruction would be given. So I'm in a position of not being able to instruct on that until after I've heard the defense's closing.

In response, defense counsel pointed out that there were two potential instances of battery in the case: one in the hallway and one on the porch. As to the alleged battery in the hallway, defense counsel intended to argue that the State had not proven beyond a reasonable doubt that the battery in the hallway occurred because Graham's testimony was uncorroborated. As to the alleged battery on the porch, defense counsel intended to argue that Ortiz was acting in lawful self-defense.

After hearing the defense's argument, the trial court again weighed the evidence in the case and questioned the quality of the evidence supporting defendant's self-defense theory:

So first of all, I'm not clear that self-defense has, in fact, been established by evidence here. The evidence you have -- the only evidence that could arguably be self-defense is a statement made by Ms. Ortiz on the body-worn camera that she told Ms. Graham, if you lay your hands on me, I will react. And then in another place, the deputy asks her, did she lay hands on you, then you hear truck noise, but the deputy said she said yes. What we don't know is when that happened, how that happened, where that happened, how Ms. Ortiz was perceiving

8

any danger to her at that point. None of that is there. So we don't even know what laying hands on means. Did she punch her or did she pat her on the shoulder?  We don't know.  None of that is there.

The trial court then reiterated its ruling that in order to receive a jury instruction on self-defense, the defense would have to affirmatively concede that a battery occurred:

> And so if this is where we're going, this is going to be a *Nixon* inquiry because I'm not going to allow you to argue that it didn't happen. You're going to have to -- if you want the self-defense instruction, you're going to have to argue that it did happen and it was justified. That's the only way you're going to get the self-defense instruction in this case, because to -- because what you're trying to do is weave through it and say, well, I'm going to argue this didn't happen and that didn't happen, but maybe something happened.  No, that's not how you get a self-defense instruction.  If you want self-defense, it is an admission and avoidance, and so there has to be an admission of the battery, and that you're going to have to talk with Ms. Ortiz about because I'm going to have to do a *Nixon* inquiry with her and make sure that she understands you're conceding elements of the crime.

Defense counsel vociferously objected to the trial court's ruling that Ortiz had to admit that she committed a battery in order to request a jury instruction on self-defense.  Defense counsel pointed out that a defendant is permitted to argue inconsistent defenses as long as proof of one defense does not necessarily disprove the other.  The trial court responded that it believed its ruling complied with this rule because the defense arguing that a battery did not happen disproved that self-defense occurred.  Defense counsel again objected and also argued to the trial court that there were two separate instances of battery in the case – one in the hallway and one on

the porch.  The defense argued that the defense should be able to argue that the State

failed to meet its burden of proof as to the battery in the hallway even if the defense

was arguing that the separate instance of battery on the porch was an act taken in

self-defense.  The trial court rejected this distinction, stating:

> See, here's the thing. What you're trying to do is avoid the ruling by saying, I'm going to argue that this battery didn't happen and that battery didn't happen the way that they said it happened in the hopes that the jury will conclude that no battery happened, but that's not an option.  And so if you want the self-defense instruction, you're going to have to concede that a battery happened. That's what the case law says.

> You can't avoid -- you can't confess and avoid at the same time that you're saying nothing happened. That's why it's an affirmative defense. And so I'm not sure what the point would be of saying, well, it didn't happen in the hallway, unless you're trying to convince the jury that the State hasn't proven their case on the elements of the battery.

> . . . .

> So if the point of your arguing that is to try to convince the jury that no battery occurred, then, no, you can't argue that. You must affirmatively concede that a battery occurred to get that self-defense instruction. That's the ruling. You must stand up in front of the jury and say, A battery happened, however, it was self-defense.  If that's what you want to do -- and that's the reason for the *Nixon* inquiry because you are going to have to affirmatively concede that the battery occurred if you're alleging that it was justified. You cannot at the same time say that it didn't happen, but if it did happen, it was justified. That is not allowable under the case law.

When defense counsel again asked the trial court for clarity regarding whether

the defense could argue that the State did not meet its burden of proof regarding the

battery in the hallway if the defense conceded, despite its objection to the trial court's

10

ruling, that a battery occurred on the porch, the trial court again rejected this distinction and stated that the defense could not argue that the battery in the hallway did not occur:

> Again, I'm back to why you're making that argument. If why you're making that argument is to suggest that whatever occurred in the hallway involved some sort of a laying on of hands . . . by Ms. Graham, that's self-defense. If you're arguing it to try to suggest to the jury that no battery happened, that's not allowable because you must affirmatively concede that the battery occurred in order to get the self-defense instruction.

Defense counsel responded by pointing out that its defenses were not inconsistent at all. The defense maintained that there is no inconsistency between arguing that the battery in the hallway did not occur and that the battery on the porch was an act of lawful self-defense. The trial court rejected defense counsel's arguments and maintained its ruling. The trial court also ruled that it would not give the jury the self-defense instruction until defense counsel conceded in closing argument that Ortiz committed a battery. The trial court also ruled that defense counsel could not reference the jury instruction on self-defense in its closing argument until after defense counsel conceded during the argument that Ortiz committed a battery. The trial court stated that after defense counsel made the concession in its closing argument, defense counsel could then approach the bench – in the middle of his closing argument – to obtain a ruling on whether defense

11

counsel had sufficiently conceded that Ortiz committed a battery in order for the trial court to give the self-defense instruction to the jury.

Before closing arguments, the trial court read all of the jury instructions to the jury except the self-defense instruction. The trial then proceeded to closing arguments. At the beginning of his closing argument, defense counsel stated:

> It is clear from Ms. Ortiz's statement on the body-worn camera that her hands were placed on to Ms. Graham. Ms. Graham testified for you that that was not -- that Ms. Graham did not invite that, that it was against Ms. Graham's wishes. And that did happen out on the patio area. We concede that to you, okay.

Defense counsel then approached the bench to obtain a ruling that the self-defense instruction would be given to the jury. However, the trial court ruled that defense counsel's concession was not sufficient. The following exchange occurred:

> THE COURT: The concession has to be that the element of battery has been satisfied by the State.
>
> DEFENSE COUNSEL: I have to literally say that?
>
> THE COURT: Yes, because you cannot then argue against it. It has to be proven to the jury that you have conceded the battery occurred, but it is just argued to self-defense.

Defense counsel then returned to his closing argument and stated to the jury, "So you add those two elements together and what do you get? It's a battery, okay? We concede that." At that point, the trial court then interrupted defense counsel's closing argument and read the standard jury instruction on self-defense to the jury. After

12

the trial court finished reading the instruction, defense counsel finished his closing argument. The jury returned a verdict of guilty as charged. This appeal followed.

**Analysis**

On appeal, Ortiz argues that the trial court erred by forcing Ortiz to concede that she committed a battery before the trial court would give the jury an instruction on self-defense. Ortiz is correct.

## I.    Ortiz was entitled to a jury instruction regarding self-defense.

"Generally, a trial court's decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion." *Smith v. State*, No. 6D23-2239, 2025 WL 1786726, at *4 (Fla. 6th DCA June 27, 2025) (quoting *Vila v. State*, 74 So. 3d 1110, 1112 (Fla. 5th DCA 2011)); *see also Espichan v. State*, 391 So. 3d 653, 656 (Fla. 6th DCA 2024); *Gonzalez v. State*, No. 6D23-509, 2024 WL 1689215, at *5 (Fla. 6th DCA Apr. 19, 2024). "However, in a criminal proceeding, the trial court's discretion is narrower because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support the theory and the theory is recognized as valid under Florida law." *Smith*, 2025 WL 1786726, at *4 (quoting *Vila*, 74 So. 3d 1112); *see also Espichan*, 391 So. 3d at 656-57; *Gonzalez*, 2024 WL 1689215, at *5 ("[I]n a criminal proceeding, the trial court's discretion is limited by the defendant's right to have the jury instructed on any valid

13

theory of defense supported by record evidence." (quoting *Cliff Berry Inc. v. State*, 116 So. 3d 394, 406 (Fla. 3d DCA 2012))).

"The trial court should not weigh the evidence when determining whether to give the requested instruction." *Smith*, 2025 WL 1786726, at *4 (quoting *Spurgeon*, 114 So. 3d at 1047). "The jury—not the trial judge—decides the weight of the evidence." *Id.*; *see also Vila*, 74 So. 3d at 1112 ("In determining whether to give a requested instruction, the trial court should consider the evidence presented without weighing the evidence, as the latter is a task for the jury."); *Gonzalez*, 2024 WL 1689215, at *5 ("In determining whether to give the requested instruction, the trial court should consider the evidence in the main case without weighing the evidence." (quoting *Rockerman v. State*, 773 So. 2d 602, 603 (Fla. 1st DCA 2000))). "A criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is *any* evidence to support it, no matter how weak or flimsy." *Smith*, 2025 WL 1786726, at *4 (quoting *Elder v. State*, 296 So. 3d 440, 444 (Fla. 4th DCA 2020) (emphasis in original)); *Espichan*, 391 So. 3d at 657; *Gonzalez*, 2024 WL 1689215, at *5 ("A defendant is entitled to a jury instruction on his theory of the case if there is *any* evidence to support it, no matter how flimsy that evidence might be." (quoting *Wright v. State*, 705 So. 2d 102, 104 (Fla. 4th DCA 1998) (emphasis in original) (internal quotations, citations omitted))).

14

"In the specific context of self-defense, Florida's courts have repeatedly recognized that the question of self-defense is one of fact, and is one for the jury to decide where the facts are disputed." *Smith*, 2025 WL 1786726, at *5 (quoting *Vila*, 74 So. 3d at 1112 (internal quotations omitted)); *see also Gonzalez*, 2024 WL 1689215, at *5; *Radler v. State*, 290 So. 3d 87, 91 (Fla. 4th DCA 2020); *Spurgeon*, 114 So. 3d at 1047. "If there is any evidence to support a theory of self-defense, the trial court should give the requested instruction however flimsy the evidence is which supports that theory or however weak or improbable the testimony may have been." *Smith*, 2025 WL 1786726, at *5 (quoting *Wagers v. State*, 199 So. 3d 1116, 1117 (Fla. 5th DCA 2016)); *see also Espichan*, 391 So. 3d at 657 ("[W]e recently stressed the importance of giving a defendant's requested instruction on self-defense where there is any evidence to support the instruction, no matter how slight."); *Sipple v. State*, 972 So. 2d 912, 915 (Fla. 5th DCA 2007) ("As long as there is any evidence of self-defense presented by the defendant, the instruction is warranted."); *Taylor v. State*, 410 So. 2d 1358, 1359 (Fla. 1st DCA 1982) ("A defendant is entitled to his requested self-defense instruction regardless of how weak or improbable his testimony may have been with respect to the circumstances leading up to the battery."); *Wright*, 705 So. 2d at 104 ("[I]t is not the *quantum* or the *quality* of the proof as to self-defense that determines the requirement for giving the charge. If *any* evidence of a substantial character is adduced . . . the element of self-defense

15

becomes an issue, and the jury, as the trier of the facts, should be duly charged as to the law thereon, because it is the jury's function to determine that issue." (quoting *Kilgore v. State*, 271 So. 2d 148, 152 (Fla. 2d DCA 1972)) (emphasis in original); *Radler*, 290 So. 3d at 91-92 (holding that even if there was no evidence of an overt act which could reasonably have caused the defendant to fear that he would be subject to great bodily harm, the combination of activities observed by the defendant prior to his use of deadly force could provide sufficient evidence that the defendant reasonably believed that he was in danger of great bodily harm such that the defendant was entitled to a jury instruction on self-defense). "Where evidence presented at trial supports an instruction on self-defense (use of deadly force as well as non-deadly force), it is error not to give it." *Smith*, 2025 WL 1786726, at *5 (quoting *Curington v. State*, 704 So. 2d 1137, 1140 (Fla. 5th DCA 1998))

"Additionally, in assessing whether there is any evidence to support a theory of self-defense, no particular type of evidence is required." *Smith*, 2025 WL 1786726, at *5. "A defendant is not required to testify at trial to receive a jury instruction on self-defense." *Smith*, 2025 WL 1786726, at *5 (quoting *Spurgeon*, 114 So. 3d at 1047 (internal alterations omitted)); *see also Gonzalez*, 2024 WL 1689215, at *5; *Sipple*, 972 So. 2d at 916; *Wright*, 705 So. 2d at 104 ("To raise self-defense, a defendant does not have to testify directly about his intent behind an act occurring in the past, or that he made a conscious decision to defend himself in a

16

certain way."). "A defendant's statements admitted into evidence at trial may be sufficient evidence for a self-defense instruction. The cross-examination of State witnesses can also support a claim of self-defense." *Smith*, 2025 WL 1786726, at *5 (quoting *Spurgeon*, 114 So. 3d at 1047); *see also Jefferson v. State*, 264 So. 3d 1019, 1028 (Fla. 2d DCA 2018). "Finally, if a jury can reasonably infer from circumstantial evidence presented at trial that the defendant had the state of mind necessary for self-defense, then the defendant is entitled to a jury instruction on self-defense." *Smith*, 2025 WL 1786726, at *5 (quoting *Spurgeon*, 114 So. 3d at 1047); *see also Gonzalez*, 2024 WL 1689215, at *5; *Jefferson*, 264 So. 3d at 1028; *Johnson v. State*, 634 So. 2d 1144, 1145 (Fla. 4th DCA 1994).

In this case, Ortiz was entitled to a jury instruction on self-defense. As defense counsel pointed out at trial, there were at least three pieces of evidence supporting Ortiz's theory of self-defense: (1) Ortiz's statements shown in Deputy Waters's body camera recording; (2) Deputy Waters's testimony at trial that Ortiz told him that she told Graham not to touch her and that "Graham had put her hands on her"; and (3) Mahoney's testimony that Graham was holding onto Ortiz's shoulders during the altercation. Because there was at least some evidence to support Ortiz's theory of self-defense, Ortiz was entitled to a jury instruction on self-defense.

17

**II.  Ortiz did not argue any defense that necessarily disproved self-defense.**

While the trial court initially weighed the quality of Ortiz's evidence supporting her self-defense theory rather than, as the law required, simply acknowledging that there was some evidence to support the theory and that, therefore, Ortiz was entitled to the instruction, the trial court did ultimately rule that Ortiz could receive a jury instruction on self-defense.  However, the trial court conditioned the giving of the instruction on Ortiz's counsel first affirmatively conceding to the jury that Ortiz committed a battery upon Graham.  This was error.

"[I]nconsistencies in criminal defense theories are permissible unless the proof of one theory necessarily disproves the other." *Goode v. State*, 856 So. 2d 1101, 1104 (Fla. 1st DCA 2003); *see also Wright*, 705 So. 2d at 104.  Applying this rule, Florida courts have found, in certain instances, that a defendant's denial that the defendant committed the charged crime necessarily disproved the defendant's self-defense theory as to that same charge and that, therefore, the defendant could not argue both that he or she did not commit the charged offense and also argue self-defense to the same charge. *See Wright*, 705 So. 2d at 104; *Richardson v. State*, 251 So. 2d 570, 571 (Fla. 4th DCA 1971).  However, each of these instances was in the context of the defendant basing his or her denial of the charged crime on the affirmative assertion of some fact that necessarily disproved the theory of self-defense.  For example, in *Richardson*, the Fourth District found no error in a trial

18

court failing to instruct the jury on self-defense when the defendant contended at trial that the shooting that he was charged with committing was committed by a totally different person. 251 So. 2d at 571. The defendant's affirmative assertion at trial that a different person committed the shooting was irreconcilable with the theory that the defendant committed the shooting in self-defense. Similarly, in *Wright v. State*, a defendant charged with resisting a law enforcement officer with violence affirmatively testified and argued that he did not hit or commit any violence of any kind against the police officers. 681 So. 2d 852, 853 (Fla. 5th DCA 1996). The defendant's affirmative argument that he never hit the officers was irreconcilable with the theory that he hit the officers in self-defense. *Id.*

While a defendant cannot affirmatively argue one defense that necessarily disproves self-defense and also receive a jury instruction on self-defense, that does not mean that a defendant must affirmatively admit to the charged crime or elements of the charged crime in order to receive a jury instruction on self-defense. On the contrary, a defendant may argue other theories of defense to the charged crime that are inconsistent with self-defense, as long as the defendant's other theories do not necessarily disprove self-defense.

For example, the Fourth District held that where a defendant did not concede at trial that he committed the charged offense and testified that he did not remember

19

committing the offense[3], but there was circumstantial evidence from which a jury could infer that the defendant committed the charged offense while acting in lawful self-defense, the defendant was entitled to a jury instruction on self-defense. *Johnson*, 634 So. 2d at 1145. As the Fourth District later noted when discussing *Johnson* in *Wright*, "[a] lack of memory does not irreconcilably disprove a self-defense claim." *Wright*, 705 So. 2d at 105. Similarly, in *Kiernan v. State*, a defendant charged with second-degree murder defended the charge by arguing that the stabbing which he was alleged to have committed was an accident. 613 So. 2d 1362, 1364 (Fla. 4th DCA 1993). Because the defendant's argument that the stabbing was accidental did not necessarily disprove his theory of self-defense, the Fourth District held that the trial court erred by denying the defendant's request for a jury instruction on self-defense. *Id*.; *see also Mills v. State*, 490 So. 2d 204, 205 (Fla. 3d DCA 1986) (holding that the defendant's argument that the shooting with which she was charged was an accident did not disprove that the defendant was acting in self-defense and that, therefore, the trial court erred by denying the defendant's request for a jury instruction on self-defense).

In addition to a defendant being permitted to affirmatively assert defense theories that do not necessarily disprove self-defense without sacrificing the right to

---

[3] The defendant in *Johnson* was intoxicated at the time of the alleged offense. 634 So. 2d at 1145, n.1.

20

a self-defense instruction, a defendant may also simply argue that the State failed to meet its burden of proof on the underlying crime charged without sacrificing the right to a jury instruction on self-defense. *Goode*, 856 So. 2d at 1104–05. A defendant's argument that the State did not meet its burden of proof on the crime charged does not "necessarily disprove" self-defense. *Id*. Indeed, an argument that the State did not meet its burden of proof does not prove or disprove anything – it simply points out the lack of proof put forth by the State.

In sum, while it is correct that a defendant may not affirmatively argue a defense that necessarily disproves self-defense and also receive a jury instruction on self-defense, there is no support in Florida law for the notion that a defendant must affirmatively concede that the defendant committed the charged offense in order to receive a jury instruction on self-defense. Such a notion would mean that a defendant could never argue self-defense and also a defense theory inconsistent with self-defense, which is contrary to the well-established rule in Florida law that criminal defense theories that are merely inconsistent, but do not necessarily disprove each other, are in fact permissible.

In this case, Ortiz did not argue any theory of defense that necessarily disproved that she acted in lawful self-defense. The trial court ruled that Ortiz could not argue both that the State did not meet its burden to prove beyond a reasonable

21

doubt that Ortiz committed the crime charged, and also argue self-defense. As explained above, this was wrong under well-settled Florida law.

Moreover, Ortiz's defense counsel below did not even attempt to argue that the State did not meet its burden to prove that Ortiz committed the battery which Ortiz argued was committed in self-defense. Rather, defense counsel argued below that the State failed to meet its burden of proof as to one of the two alleged instances of battery at issue in the trial – the battery in the hallway. Defense counsel never argued or requested to argue that the State failed to meet its burden of proof to establish that a battery occurred on the porch, and that was the only battery that the defense argued was committed in self-defense. Even if there was a rule prohibiting a defendant from arguing that the State failed to meet its burden of proof on the crime charged and also arguing self-defense on that same charge (which there is not), such a rule would not apply here because Ortiz never argued self-defense to the battery in the hallway and never argued a lack of proof as to the battery on the porch. There were two separate instances of battery at issue in this case. There is nothing inconsistent whatsoever in arguing that the State failed to prove one instance of battery and that a separate instance of battery, while it occurred, was committed in lawful self-defense.

Because Ortiz did not argue any theory of defense that necessarily disproved self-defense, and the evidence otherwise supported a self-defense instruction, Ortiz was entitled to a jury instruction on self-defense.

## III. The trial court improperly removed the State's burden of proof.

"The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 104 (2013). Applying the Due Process Clause set forth in Article I, Section 9 of the Florida Constitution, the Florida Supreme Court has likewise recognized that "[a]mong the attributes of due process is the requirement that the state must prove an accused guilty beyond a reasonable doubt . . . . Indeed, the requirement of proof beyond a reasonable doubt is 'basic in our law and rightly one of the boasts of a free society.'" *State v. Cohen*, 568 So. 2d 49, 51 (Fla. 1990) (quoting *In re Winship*, 397 U.S. 358, 362 (1970)); *see also Gantling v. State*, 23 So. 857, 861 (Fla. 1898) ("It is a positive legal right, appertaining to every accused person, whether guilty or innocent, that he shall not be condemned for a criminal offense in a judicial trial until and unless the evidence produced against him shall be legally sufficient to prove his guilt beyond a reasonable doubt.").

In this case, without any legal basis to do so, the trial court required Ortiz to concede that elements of the crime with which she was charged were satisfied as a condition of receiving a jury instruction which she had a right to receive under Florida law without any such concession. Requiring a defendant to concede to the jury that elements of a crime were established is the opposite of requiring the State to prove each element of a crime to the jury beyond a reasonable doubt. Because Ortiz was entitled to a jury instruction regarding self-defense as a matter of right under Florida law, the trial court requiring Ortiz to concede that she committed a battery in order to obtain the jury instruction improperly removed the State's burden of proof in violation of Ortiz's constitutional rights under the Sixth Amendment and the Due Process Clause of the United States Constitution, and under Article I, Section 9 of the Florida Constitution.

## Conclusion

Ortiz was entitled to a jury instruction on self-defense because there was sufficient evidence admitted at the trial to warrant the instruction. Ortiz did not argue any theory of defense that necessarily disproved her self-defense theory such that she sacrificed her right to the instruction. By requiring Ortiz to concede to the jury that elements of the crime with which she was charged were established in order to obtain a jury instruction to which Ortiz was entitled as a matter of right, the trial court improperly removed the State's burden to prove each element of the crime to

24

the jury beyond a reasonable doubt. For these reasons, we reverse Ortiz's conviction and sentence and remand this case to the trial court to conduct a new trial.

AFFIRMED in part; REVERSED in part; and REMANDED with instructions.

STARGEL and SMITH, JJ., concur.

Blair Allen, Public Defender, and Caroline Joan S. Picart, Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Daniel Caldwell, Assistant Attorney General, Daytona Beach, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED